**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2011 APR 25 ☐ 4: 52

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| ANDREI SINIOUKOV, Individually and on Behalf of All Others Similarly Situated <br><br> Plaintiff, <br><br> vs. <br><br> SRA INTERNATIONAL, INC., DR. ERNST VOLGENAU, JOHN W. BARTER, LARRY R. ELLIS, MILES R. GILBURNE, W. ROBERT GRAFTON, WILLIAM T. KEEVAN, MICHAEL R. KLEIN, DR. STANTON D. SLOANE, DR. GAIL R. WILENSKY, PROVIDENCE EQUITY PARTNERS LLC, STERLING PARENT INC., and STERLING MERGER INC., <br><br> Defendants. | Civil Action No. 1:11cv447 LO/TRJ <br><br> CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES <br><br> DEMAND FOR JURY TRIAL |

1.      Plaintiff Andrei Sinioukov ("Plaintiff") files this direct shareholder class action complaint on behalf of the public shareholders of SRA International, Inc. ("SRA" or the "Company") arising out of the proposed merger ("Proposed Merger," "Proposed Transaction," or "Proposed Acquisition") of SRA with Providence Equity Partners LLC ("Providence").

2.      Plaintiff sues SRA, Providence, and SRA's Board of Directors ("Board") for breach of fiduciary duties owed to SRA's shareholders, for aiding and abetting such breaches, and for violations of the Securities Exchange Act of 1934.

3.      On March 31, 2011, the defendants named herein entered into a definitive merger agreement ("Merger Agreement") pursuant to which Providence will acquire all of the Company's outstanding Class A and Class B common stock for $31.25 per share in cash.  The Merger Agreement is the product of a fundamentally flawed process that does not maximize shareholder value for SRA shareholders. Essentially, SRA's Board, *vis-à-vis* SRA founder and Board Chairman, Defendant Dr. Ernst Volgenau ("Volgenau"), steered the shopping process in favor of Providence despite the availability of many other potential suitors.  Providence was given distinct advantages over all other bidders causing the bidders to either lose interest because of exhaustion or because they were dissuaded from continuing in the process by Volgenau.  Applicable Delaware law plainly forbids directors from favoring one bidder over another, as was done here.

4.      Furthermore, on April 18, 2011, the Company filed a Preliminary Proxy Statement on Schedule 14A ("Proxy") with the U.S. Securities and Exchange Commission ("SEC").  The Proxy fails to fully apprise SRA shareholders of sufficient material information about the Proposed Transaction, thereby depriving SRA shareholders from casting informed, intelligent, and rational votes in favor of or against the Proposed Transaction, or to seek statutory appraisal under Delaware law. As more fully alleged herein, the Proxy is materially misleading and omits material information from SRA shareholders about, *inter alia*, the process by which SRA's Board decided to enter into

- 1 -

the Merger Agreement and about the financial metrics the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), used to justify the fairness of the Proposed Transaction from a financial point of view.

5.     To make matters worse, Defendant Volgenau, as SRA's founder and Board Chairman, is a controlling shareholder of SRA who stands to gain substantially from the Proposed Transaction. Defendant Volgenau owns over 11 million shares of SRA common stock, which represents approximately 20% of total shares outstanding and approximately 71% of aggregate voting rights. Among other things, Defendant Volgenau will remain Chairman in a post-merger entity and will also enjoy a substantial equity stake in the new entity. Defendant Volgenau has entered into a voting agreement pledging his shares in support of the Merger Agreement, which effectively locks up his shares in the event of a superior proposal. Because Defendant Volgenau is a controlling shareholder and stands on both sides of the transaction, the entire fairness standard governs this case.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all claims asserted herein pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

7.     Venue is proper in this District because SRA has its principle place of business in this District. Plaintiff's claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court. Moreover, each of the Individual Defendants, as Company officers and/or directors, has extensive contacts with this District.

## PARTIES

8.      Plaintiff is and has been a shareholder of SRA at all relevant times.

9.      Defendant SRA is Delaware corporation with its principal place of business located at 4300 Fair Lakes Court  Fairfax, Virginia, 22033.  The Company is a provider of technology and consulting services and solutions primarily to government organizations.  The Company is publicly traded under the stock ticker "SRX" in the New York Stock Exchange.  According to the Company's quarterly report filed with the SEC on February 8, 2011, there were over 44 million shares of the Company's class A common stock outstanding and over 12 million shares of the Company's class B common stock outstanding as of January 31, 2011.

10.     Defendant Dr. Ernst Volgenau is and has been at all material times a director of SRA. Volgenau has, together with each of the other "Volgenau Filing Persons," defined in the Proxy at p. 15, executed a voting and support agreement with Providence, pursuant to which the Volgenau Filing Persons have agreed to vote 113,514 shares of SRA's Class A common stock and 11,702,469 shares of SRA's Class B common stock owned by them in the aggregate (representing approximately 71% of the aggregate voting power of the outstanding shares of SRA common stock on the date we signed the merger agreement) in favor of the adoption of the Merger Agreement at the special meeting.

11.     Defendant John W. Barter is and has been at all material times a director of SRA.

12.     Defendant Larry R. Ellis is and has been at all material times a director of SRA.

13.     Defendant Miles R. Gilburne is and has been at all material times a director of SRA.

14.     Defendant W. Robert Grafton is and has been at all material times a director of SRA.

15.     Defendant William T. Keevan is and has been at all material times a director of SRA.

16.     Defendant Michael R. Klein is and has been at all material times a director of SRA.

17.     Defendant Dr. Stanton D. Sloane is and has been at all material times a director of SRA.

18.     Defendant Dr. Gail R. Wilensky is and has been at all material times a director of SRA.

19.     The defendants listed in paragraphs 10 – 18 above are collectively referred to as the "Individual Defendants" or the "Board."

20.     Defendant Providence is touted as the world's leading private equity firm focused on media, entertainment, communications and information investments.

21.     Defendant Sterling Parent Inc. is a Delaware corporation and a vehicle through which the defendants seek to effectuate the merger.

22.     Defendant Sterling Merger Inc. is a Delaware corporation and a vehicle through which the defendants seek to effectuate the merger.

23.     Defendants Providence, Sterling Parent Inc. and Sterling Merger Inc. are collectively referred to herein as "Providence."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

24.     Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

      (a)     adversely affects the value provided to the corporation's shareholders;

      (b)     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)    contractually prohibits them from complying with their fiduciary duties;

(d)    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

25.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of SRA, are obligated under applicable law to refrain from:

(a)    participating in any transaction where the directors' or officers' loyalties are divided;

(b)    participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

26.    The Individual Defendants are also obliged to honor their duty of candor to SRA shareholders by, inter alia, providing all material information to the shareholders regarding a scenario in which they are asked to vote their shares or seek appraisal. This duty of candor ensures that shareholders have all the information that will enable them to make informed, rational and intelligent decisions about whether to vote their shares or seek appraisal.

27.    Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Acquisition, the burden of proving the inherent or entire fairness of the Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon Defendants as a matter of law.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action individually and as a class action on behalf of all holders of SRA common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

29.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

30.     The Class is so numerous that joinder of all members is impracticable. According to the Proxy, there are over 58 million shares of SRA common stock outstanding that are proposed to be retired in the Proposed Acquisition.

31.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)     whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(d)     whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(e)     whether the Individual Defendants have breached their fiduciary duty of candor by failing to adequately apprise SRA shareholders of material information about the Proposed Acquisition;

(f)     whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(g)     whether SRA and Providence are aiding and abetting the wrongful acts of the Individual Defendants.

32.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

33.     Plaintiff is an adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

35.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

36.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *The Company Has Real Potential*

37.     SRA is a provider of technology and consulting services and solutions primarily to government organizations. The services include project management, systems design, network and systems integration, data analysis and integration, security engineering, software development, database design and development, and independent test and evaluation. The business solutions include text and data mining, Enterprise Resource Planning, business intelligence, command and control systems, contingency and disaster planning, enterprise architecture and portfolio management, environmental support services, identity management; information sharing and knowledge management, infrastructure modernization, service-oriented architecture, training, modeling, and simulation, clinical research outsourcing, regulatory consulting and data management, law enforcement and intelligence support, and wireless integration services.

38.     SRA has done well for its stockholders, weathering the recent economic downturn:



39.     All indications are that SRA's stock will continue to increase in value. For instance, analysts estimate that the Company will experience a steady earning growth rate and, indeed, a 15% growth rate over the next 5 years.[1]

40.     Likewise, the Company's recent quarterly results speak for themselves, as it pertains to the Company's promising outlook:

### *SRA Announces Financial Results for Second Quarter of Fiscal Year 2011*

- Revenue of $435 million, up 5% year-over-year

- Diluted EPS from continuing operations of $0.34

- Operating cash flow of $30 million

**FAIRFAX, Va., February 8, 2011** — SRA International, Inc. (NYSE: SRX), a leading provider of technology and strategic consulting services and solutions to government organizations and commercial clients, today announced operating results for the second quarter of fiscal year (FY) 2011, which ended December 31, 2010.

Revenue for the quarter was $434.8 million, up 5.3% from $412.8 million in the December 2009 quarter. Organic revenue growth for the same period was 1.1%. Operating income for the quarter was $31.7 million, for an operating margin of 7.3%. Income from continuing operations was $19.8 million, for a net margin of 4.5%. Diluted earnings per share (DEPS) from continuing operations for the quarter were $0.34. Operating cash flow was $29.8 million.

During the quarter the company incurred a severance charge of $1.8 million in connection with a reduction in its indirect labor force. The actions resulted in a reduction to the annual selling, general and administrative expenses of approximately $10 million. The savings will phase in over the March quarter, and the full effect will be felt in the June quarter. The severance charge is included in selling, general and administrative expenses on the income statement.

SRA President and CEO Stan Sloane said, "Our pipeline of opportunities in the Federal market is robust. We are taking proactive steps to ensure our continued competitiveness, and are committed to delivering organic growth."

---

[1] http://moneycentral.msn.com/investor/invsub/analyst/earnest.asp?Page=EarningsGrowthRates&symbol=SRX (last visited April 25, 2011).

Executive Vice President and CFO Rick Nadeau added, "Operating cash flow was strong in the quarter. We completed the acquisition of Platinum Solutions in November, and completed the quarter with approximately $60 million in cash and no debt."

***Contract Awards***

SRA won new business in the second quarter with potential value of $270 million, if all option years are exercised. As of December 31, 2010, the company's backlog of signed business orders was $4.84 billion, up 9% year-over-year, and the funded portion of backlog was $1.0 billion, up 20% year-over-year.

Major highlights of competitive contract awards in the quarter include:

• U.S. Special Operations Command. SRA was awarded the Special Operations Research, Development and Acquisition Center Program Executive Office-Fixed Wing task order under the SOCOM Global Battlestaff and Program Support vehicle. The task order is valued at $15.3 million with a period of performance of five years.

SRA was also awarded several multiple-award, IDIQ contracts in the second quarter, which are not included in the company's quarterly bookings figure, but are expected to drive growth over time. These include:

• Federal Bureau of Investigation. Platinum Solutions, which was recently acquired by SRA, won a prime position on the Federal Bureau of Investigation Information Technology Supplies and Support Services, or IT Triple S contract. IT Triple S is a multiple-award IDIQ contract with a total ceiling value of $30 billion over 8 years, if all options are exercised.

***The Proposed Transaction with Providence***

41.     Despite the Company's promise, the Board voted in favor of the Proposed Transaction with Providence.   On or about April 1, 2011, the Company issued a release regarding the Proposed Transaction:

### *SRA to be acquired by Providence Equity Partners for $31.25 per share*

•SRA shareholders to receive $31.25 per share in cash

•Transaction valued at $1.88 billion

•SRA to become a privately held company

FAIRFAX, Va. & PROVIDENCE, R.I., Apr 01, 2011 (BUSINESS WIRE) -- SRA International, Inc. (NYSE: SRX), a leading provider of technology and strategic consulting services and solutions to government organizations and commercial clients, today announced it has entered into a definitive merger agreement under

which SRA will be acquired by an affiliate of Providence Equity Partners in an all-cash transaction.

Pursuant to terms of the agreement, SRA shareholders will receive $31.25 in cash for each share of common stock, for a total value of approximately $1.88 billion. The transaction represents a 10.2% premium based on the closing price of $28.36 on March 31, 2011 and a premium of 52.8% over the closing price of $20.45 on Dec. 31, 2010, the company's unaffected share price.

SRA's Board of Directors - acting upon the recommendation of a Special Committee consisting of independent and disinterested Directors and in conjunction with the Special Committee's outside financial and legal advisors - unanimously approved the transaction and recommended that SRA shareholders approve the transaction, with SRA Founder and Chairman Dr. Ernst Volgenau abstaining.

Dr. Volgenau said, "We believe in the merits of this transaction, which serves the best interests of our shareholders, as well as those of our 7,300 employees and more than 1,400 contracts with customers. We also look forward to partnering with Providence, whose values and culture are consistent with SRA's longstanding ethic of honesty and service. We believe these characteristics are critical as we continue to build SRA and sustain its competitive positioning for the future."

Julie Richardson, a Managing Director at Providence, said "The government information services market is a highly attractive area of investment for Providence, and SRA is a leading innovator within the national security, civil government, global health and intelligence sectors. Under Ernst's remarkable stewardship since founding the company over 32 years ago, SRA has built a strong culture of integrity and a sterling reputation for high-quality service that differentiates the company from its competitors and positions them well to compete and win in this market. We are excited about partnering with Ernst and the SRA management team to build lasting value for the company, its employees and its customers."

Following the completion of the transaction, SRA will remain headquartered in Fairfax, Va., and maintain its offices around the world. The company will continue to be led by its existing senior management team. Dr. Volgenau will continue to serve as Chairman of the SRA Board.

The transaction is subject to approval of a majority of the outstanding shares of SRA, as well as a majority of the outstanding shares of SRA Class A Common Stock (excluding shares beneficially owned by Dr. Volgenau), and other customary closing conditions and regulatory approvals. The transaction is anticipated to close during the first quarter of the SRA 2012 fiscal year, which begins on July 1, 2011. Upon closing, SRA will become a privately held company. At the request of Providence, Dr. Volgenau will roll over a portion of his existing SRA equity interest and continue to be a significant shareholder in the privately held company.

Dr. Volgenau, who owns a total of approximately 11.8 million shares of Class A and Class B common stock, representing 21% of total shares outstanding and 71% of voting rights, has agreed to vote his shares for approval of the merger. However, in

the event that the merger agreement is terminated, Dr. Volgenau will be released from this obligation.

Under the terms of the merger agreement, SRA may solicit acquisition proposals from third parties for a 30-day "go-shop" period from the date of the merger agreement. It is not anticipated that any developments will be disclosed with regard to this process unless the SRA Board of Directors makes a decision with respect to a potential superior proposal. The merger agreement provides Providence with a customary right to match a superior proposal. There is no guarantee that this process will result in a superior proposal.

The agreement between SRA and Providence concludes a process that began in October 2010, when SRA's Board of Directors formed a Special Committee of Independent Directors to explore the possibility of an acquisition. At that time, the Special Committee retained Houlihan Lokey as its outside financial adviser and Kirkland & Ellis LLP as its special counsel. Both firms are independent of SRA management. SRA, acting through the Special Committee, conducted a comprehensive process that included strategic and financial buyers. This process resulted in the current agreement with Providence.

Given published speculations over the past four months, it should be noted that SRA never received, and thus never rejected, an offer at an erroneously reported aggregate value of $2 billion. Indeed, the only figure ever communicated to SRA from that third party was a December 1, 2010 highly conditioned expression of interest in the range of $30-$31 per share which did not materialize.

The transaction will be financed through a combination of equity and debt. The debt financing is provided by BofA Merrill Lynch and Citigroup Global Markets Inc.

Houlihan Lokey acted as financial advisor and Kirkland & Ellis acted as legal advisor to the Special Committee of SRA's Board of Directors in connection with the transaction. Citigroup Global Markets Inc. and BofA Merrill Lynch acted as financial advisers and Debevoise & Plimpton served as legal counsel to Providence in connection with the transaction.

### *The Proposed Transaction Is the Product of a Fundamentally Flawed Process*

42.     Incredibly, the Company's April 18, 2011 Proxy spells out exactly how flawed the Board's decision was in entering into the Proposed Transaction.

43.     The Board spurned all strategic bidders. And the reason for that was simple, Defendant Volgenau would not be able to enjoy the types of advantages he would get with a financial suitor, as he achieves in the Proposed Transaction, like his rollover agreement and his at the money option, which is described in the Proxy as: "Dr. Volgenau may, at his option, elect to receive

additional equity interests in [the new post-merger entity], up to an aggregate value of $30 million, in lieu of cash paid upon maturity of the promissory note."

44.     Moreover, the Company provided Providence with financial projections and management forecasts during the bidding process, which it did not do for other suitors.  When other suitors expressed interest in the Company, the Board waited an unwarranted amount of time to respond to those expressions of interest – so much so that the potential suitors had to contact the Company "again," as if to remind the Board that there were other companies interested in buying SRA. Defendant Volgenau (as opposed to the appointed Special Committee), took it upon himself to contact the other suitors, after which point they dropped out of the bidding process. Potential suitors either left the bidding process because they were dissuaded by the Board's nonresponsive contact or because Defendant Volgenau dissuaded their participation.

45.     The bidding process was finally whittled down to two bidders, Financial Buyer A and Providence, both of which had proposals that were favorable to Defendant Volgenau. The Board elected to go with Providence because it was more favorable to Defendant Volgenau, not because it was better for shareholders.

46.     The Merger Agreement provides Providence with valuable information and matching rights that dissuades a potential topping bid. Likewise, Defendant Volgenau has locked up his shares in a voting agreement that would not permit the shares to be voted in favor of a different proposal. Although there is a "go shop" period of 30 days, it is window dressing. The Company would still be liable for over $28 million dollars if it found a topping bid during the go shop period; and, moreover, Defendant Volgenau will ensure that no topping bidder makes a material offer, like he did during the prior shopping process. After the ineffectual go shop period, the Company would owe a termination fee of up to $47 million in the event of a topping bid.

47.     The Individual Defendants have utterly failed to inform themselves of SRA's true value through a fair shopping process. The shopping process was tainted by Volgenau's control and self interest. As a result of the Proposed Transaction, SRA shareholders face irreparable injury and have no adequate remedy at law.   Only through issuance of an injunction to cure the unfair process can shareholders' rights be vindicated.

### *The Proxy Is False and Materially Misleading*

48.     The April 18, 2011 Proxy omits several material details about the process by which the Board entered into the Proposed Merger, as well as the financial metrics Houlihan Lokey used to justify the fairness of the deal.   Among other omissions, the Proxy fails to explain:

(a)     *Projections and forecasts given to Providence.*   The Proxy speaks to management forecasts and projections that were given to Providence. However, the Proxy does not state when such projections and forecasts were prepared, which would enable shareholder to know whether these were the same projections and forecasts shown in the Proxy.   Moreover, the Proxy does not state whether all of the other bidders besides Providence were given projections and forecasts, which would inform shareholders of how the Board treated other bidders during the shopping process and better allow shareholder to decide whether the process was fair.

(b)     *Defendant Volgenau's Option.* The Proxy speaks to Volgenau's cash-equity option. However, the Proxy does not detail how much,  in value, he would receive if he were to elect shares in lieu of cash.  Without this information, shareholders are not able to properly assess the extent to which the bidding process was tainted *vis-à-vis* Volgenau's personal stake in the outcome of the Proposed Transaction.

(c)     *Selected Companies and Selected Transaction Analysess.*  The universe of potential companies for these analysis are extremely large.  However, Houlihan Lokey used only a limited subset of companies, but does not explain how these particular companies were selected.

Without this information, shareholders are not able to properly understand how these analyses may reflect SRA's value. Moreover, the selected companies analysis does not describe whether a control premium was used, which also material for shareholder in understanding how the analysis may reflect SRA's value.

        (d)    *The Discounted Cash Flow Analysis.*  The Proxy does not explain how Houlihan Lokey arrived at the discount multiples.  Without this detail, shareholders cannot understand how this analysis reflects SRA's value.

        (e)    *Houlihan Lokey.*  The Proxy cryptically refers to the following potential conflict of interest by Houliahn Lokey,

> "In addition, *certain affiliates of Houlihan Lokey and certain of Houlihan Lokey's and such affiliates' respective employees may have committed to invest in private equity or other investment funds managed or advised by Providence or other participants in the merger or certain of their respective affiliates or security holders, and in portfolio companies of such funds,* and may have co-invested with such funds, Providence or other participants in the merger or certain of their respective affiliates or security holders, and may do so in the future."

However, shareholders need to be informed the actual details of this enigmatic statement, including whether the investments implicate the SRA transaction.  Without knowing whether and to what extent Houlihan Lokey stands on both sides of this transaction and without otherwise knowing the actual nature of Houlihan Lokey's conflict of interest, SRA shareholders cannot determine how much weight to place on Houlihan Lokey's financial analysis.  Furthermore, the Proxy neglects to detail how much Houlihan Lokey is and has been getting paid by Providence for its services, which is important for the same reasons.

        (f)    *Process Disclosures.*  The Proxy neglects to include many details of the process that led up to the Proposed Transaction, all of which would enable shareholders to understand how much influence Defendant Volgenau had over the process and the extent to which potential suitors other than Providence were treated unfairly, including but not limited to:

(i)      How many strategic buyers did not want Defendant Volgenau involved in the process or the post-merger entity?

(ii)      What were the objectives, powers and duties of the "strategic alternatives study team"; why was it created; who authorized its creation; and how many directors were on the team?

(iii)      Besides Houlihan Lokey, what was the other financial advisor considered by the Board; and why wasn't that financial advisor selected?

(iv)      How many potential suitors did the Company initiate contact with during the bidding process?  Which ones were strategic suitors?  Which ones were financial suitors?

(v)      The Proxy states: "On January 22, 2011, The Telegraph published an article which stated, incorrectly, that the Company had received and rejected a nearly $2 billion offer from a strategic buyer named therein." What was incorrect above the article? The fact that an offer was made? The amount of the offer? And if the latter, who made the offer?

(vi)      Why did Strategic Bidder E drop out of the process?

(vii)      As of March 28, 2011, what were the respective rollover and voting agreement terms on the table for Providence and Financial Bidder A, respectively?

(viii)      Why did Financial Bidder A drop out of the process?

(ix)      The Proxy states, "On the morning of April 1, 2011, the Company and Providence issued a joint press release announcing the execution of the merger agreement." Was this announcement made before the markets opened on April 1, 2011?

49.      Without disclosure of this material information above, Plaintiff and the class of SRA shareholders are unable to make intelligent, rational and informed decisions about whether to tender their shares in favor of the Proposed Transaction.  As such, Plaintiff and the class face irreparable harm and have no adequate remedy at law.

## CAUSES OF ACTION

## COUNT I

### Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

50.     Plaintiff repeats and realleges each allegation set forth herein.

51.     Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, candor and independence owed to the public shareholders of SRA and have acted to put their personal interests and the interest of Providence ahead of the interests of SRA's shareholders.

52.     By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are attempting to unfairly deprive plaintiff and other members of the Class of the true value of their investment in SRA .

53.     Defendants have knowingly or recklessly and in bad faith violated their fiduciary duties by entering into a transaction with Providence without regard to the fairness of the transaction to SRA 's shareholders.

54.     As demonstrated by the allegations above, defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of SRA because, among other reasons:

(a)     they failed to take steps to maximize the value of SRA to its public shareholders;

(b)     they capped the price of SRA 's stock giving defendants an unfair advantage, by, among other things, failing to solicit other potential acquirors or alternative transactions; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Merger.

- 17 -

55.     By reason of the foregoing acts, practices and course of conduct, defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

56.     As a result of defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed. Unless the Proposed Merger is enjoined by the Court, defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Merger terms, and will not supply to SRA ' public shareholders sufficient information to enable them to cast informed votes on the Proposed Merger and may consummate the Proposed Merger, all to the irreparable harm of the members of plaintiff and the Class.

57.     Plaintiff and the members of the Class have an inadequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

**Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty
(Against Defendants SRA and Providence)**

58.     Plaintiff repeats and realleges each allegation set forth herein.

59.     Defendants SRA and Providence are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of SRA .

60.     The Individual Defendants breached their fiduciary duties of good faith, loyalty, due care and candor to the SRA  shareholders by failing to:

        (a)     fully inform themselves of the market value of SRA before entering into the Proposed Merger;

        (b)     act in the best interests of the public shareholders of SRA common stock;

- 18 -

(c)      maximize shareholder value;

(d)      obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Merger;

(e)      act in accordance with their fundamental duties of good faith, due care and loyalty; and

(f)      put the shareholders' best interests above those of the Individual Defendants.

61.      Such breaches of fiduciary duties could not and would not have occurred but for the conduct of defendants SRA and Providence, which, therefore, aided and abetted such breaches via entering into the Proposed Merger with each other.

62.      Defendants SRA and Providence had knowledge that they were aiding and abetting the Individual Defendants' breach of their fiduciary duties to the SRA shareholders.

63.      Defendants SRA and Providence rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the SRA shareholders.

64.      As a result of the unlawful actions of defendants SRA and Providence, plaintiff and the other members of the Class will be irreparably harmed.  Unless the actions of defendants SRA and Providence are enjoined by this Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to plaintiff and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value.

65.      Plaintiff and the other members of the Class have no adequate remedy at law.

## COUNT III

**Against the Individual Defendants and Providence for Violations of**
**§14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder**

66.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     During the relevant period, the Individual Defendants and Providence disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants and Providence. It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Merger, and the actual intrinsic value of the Company's assets.

69.     In so doing, the Individual Defendants and Providence made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. By virtue of their positions within the Company, the Individual Defendants and Providence were aware of this information and of their duty to disclose this information in the Proxy.

70.     The Individual Defendants and Providence were at least negligent in filing the Proxy with these materially false and misleading statements.

71.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Merger. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

72.     By reason of the foregoing, the Individual Defendants and Providence have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

73.     Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT IV

### Against the Individual Defendants and Providence for
### Violation of §20(a) of the 1934 Act

74.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of SRA within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of SRA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

76.     Each of the Individual Defendants and Providence was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of this document.

78.     Providence also had direct supervisory control over composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

79.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants and Providence were each involved in negotiating, reviewing and approving the Proposed Merger. The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which had input from both the directors and Providence.

80.     By virtue of the foregoing, the Individual Defendants and Providence have violated §20(a) of the 1934 Act.

81.     As set forth above, the Individual Defendants and Providence had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, SRA ' shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief in its favor and in favor of the Class and against defendants as follows:

A.      Declaring that this action is properly maintainable as a class action;

B.      Declaring and decreeing that the Proposed Merger was entered into in breach of the fiduciary duties of defendants and is therefore unlawful and unenforceable;

C.      Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Merger, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a

transaction which is in the best interests of SRA's shareholders until the process for the sale or

auction of the Company is completed and the highest possible value is obtained;

E.      Rescinding, to the extent already implemented, the Proposed Merger or any of the

terms thereof;

F.      Awarding plaintiff the costs and disbursements of this action, including reasonable

attorneys' and experts' fees; and

G.      Granting such other and further equitable relief as this Court may deem just and

proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  April 25, 2011                          Respectfully submitted,


_____
Steven B. Gould (Va. Bar No. 45410)
sgould@brownandgould.com
Jesse D. Stein (Va. Bar No. 74221)
jstein@brownandgould.com
BROWN & GOULD, LLP
7700 Old Georgetown Rd.
Suite 500
Bethesda, MD 20814
Telephone:  301-718-4548
301-718-8037 (fax)


Stuart A. Davidson
Cullin A. O'Brien
ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Randall J. Baron
A. Rick Atwood, Jr.
David T. Wissbroecker
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)

JOHNSON BOTTINI, LLP
FRANK A. BOTTINI
501 W. BROADWAY, SUITE 1720
SAN DIEGO, CA  92101
(619) 230-0063
(619) 238-0622 (fax)

Attorneys for Plaintiff and the class