UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANDREI SINIOUKOV, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br> *v.* <br><br> SRA INTERNATIONAL, INC., *et al.*, <br><br> *Defendants*. | No. 1:11cv447 <br> (LO/TRJ) |

# BRIEF IN SUPPORT OF
# SRA DEFENDANTS' MOTION TO STAY PENDING
# RESOLUTION OF FIRST-FILED ACTION

## TABLE OF CONTENTS

**INTRODUCTION**..............................................................................................................1

**BACKGROUND** ............................................................................................................2

A.      The Parties ........................................................................................................2

B.      The Proposed Merger Between SRA and Providence ............................................3

C.      *SEPTA* and This Action Are Substantially the Same...............................................6

**ARGUMENT**...................................................................................................................**10**

THE COURT SHOULD STAY THE PRESENT ACTION IN FAVOR OF
        *SEPTA* AS THE PRIOR-FILED ACTION..........................................................10

A.      The present action presents the same issues as the *SEPTA* action, requests
        the same relief, and seeks to represent the same proposed class of
        plaintiffs ..........................................................................................................10

B.      A stay would avoid unnecessary duplication of efforts and the risk of
        inconsistent results ............................................................................................14

**CONCLUSION** ................................................................................................................**17**

The Court should stay this action in favor of a prior-filed suit pending in the Delaware Court of Chancery, *Southeast Pennsylvania Transit Authority v. Ernst Volgenau, et al.*, C. A. No. 6354-VCN (Del. Ch. filed Apr. 7, 2011) ("*SEPTA*").[1]  *SEPTA* and this case both are putative stockholder class actions arising out of the same proposed merger, asserting essentially the same claims, and seeking the same relief.  Both cases are based on the same allegations that the directors of SRA International, Inc. ("SRA" or the "Company") somehow breached their fiduciary duties by approving and recommending a pending merger between SRA and affiliates of Providence Equity Partners LLC—a transaction that was the product of a competitive bidding process, run by a special committee of independent and disinterested directors, which produced a more-than-50% premium over the unaffected share price of SRA stock.

The plaintiff in *SEPTA* filed its suit on April 7, 2011.  Plaintiff Andrei Sinioukov filed this suit on April 25, 2011.  Knowing that they had lost the race to the courthouse, Sinioukov tacked on a claim under section 14(a) of the 1934 Exchange Act that merely repackages the same allegations of inadequate proxy disclosures that also underlie the state breach of fiduciary duty claims in *SEPTA* (and, for that matter, plaintiff's own fiduciary duty claims), as well as a derivative section 20(a) control person claim.

The addition of federal securities claims is a lawyer-driven attempt to differentiate plaintiff's suit from the first-filed *SEPTA* case to justify prosecution of this case separate and apart from the pending Delaware litigation.  But there is no justification for plaintiff to require

---

[1]   This motion is brought by Defendants SRA International, Inc., John W. Barter, Larry R. Ellis, Miles R. Gilburne, W. Robert Grafton, William T. Keevan, Michael R. Klein, Dr. Stanton D. Sloane, Dr. Gail R. Wilensky, (collectively, the "SRA Defendants").  Defendants Dr. Ernst Volgenau, Providence Equity Partners LLC, Sterling Parent Inc., and Sterling Merger Inc. have advised that they join in this motion.

the defendants to defend duplicative allegations in two separate fora or to require this Court to expend its time and resources on a matter involving core issues of Delaware state corporate governance law already being addressed by that state's Court of Chancery which possesses expertise in matters of Delaware corporate law. *See Cohen v. Hillman, et al.*, Order & Hr'g Tr., No. 1:10cv237 (E.D. Va. Apr. 30, 2010) (Brinkema, J.) (staying case that included section 14(a) claim in favor of case pending in Delaware Court of Chancery and challenging the same potential transaction) (attached as Exhibit A).   Moreover, because plaintiff elected to add his federal section 14(a) claim in an effort to gain a federal forum and (unsuccessfully) distinguish his case from *SEPTA*, he must accept the downside of that effort: the stay of all proceedings and discovery mandated by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(1)(A) and (b)(3)(B), pending appointment of a PSLRA lead plaintiff and counsel and resolution of the motions to dismiss that defendants will be filing.

For these reasons, as explained more fully below, the Court should stay this suit in favor of the first-filed *SEPTA* case.

## BACKGROUND[2]

### A.      The Parties

SRA International, Inc. is a publicly-traded corporation listed on the New York Stock Exchange, incorporated under the laws of Delaware and headquartered in Fairfax, Virginia. SRA is a leading provider of technology and strategic consulting services, primarily to governmental organizations.   SRA's chairman of the Board of Directors and founder is Dr. Ernst Volgenau, who beneficially owns, directly or indirectly, approximately 20% of the shares

---

[2]   The factual background is based on pages 15-28 of SRA's Schedule 14a Preliminary Proxy (attached hereto as Exhibit B).   Plaintiff's complaint cites to and relies on the Preliminary Proxy and therefore that document is incorporated by reference into plaintiff's pleading. *See* Fed. R. Civ. P. 10(c).

outstanding. Dr. Stanton D. Sloane is the Company's chief executive officer and a member of the Board. The other individual defendants are all members of SRA's Board.

Providence Equity Partners LLC is a leading global private equity firm, incorporated under the laws of Delaware. The two Providence affiliates involved in the merger, Sterling Parent, Inc. and Sterling Merger, Inc. are also Delaware corporations.

Plaintiff Andrei Sinioukov alleges that he is a shareholder of SRA and was at the time the Merger was announced. However, plaintiff has not filed the certification required by the PSLRA, which mandates disclosure of, among other things, shares held by the plaintff, as well as a representation that the plaintiff has not purchased the securities at the direction of counsel or for the purpose of participating in the litigation. *See* 15 U.S.C. § 78u-4(a)(2)(A).[3]

**B.      The Proposed Merger Between SRA and Providence**

Over the years, SRA has had preliminary discussions with various potential counterparties in possible strategic transactions. In May 2010, following preliminary discussions with Providence and another potential counterparty, SRA's board of directors formed a strategic alternatives study team and retained an investment bank to assist with the evaluation of potential strategic alternatives. Through the summer and early fall of 2010, the strategic alternatives study team assessed different strategic avenues, including maintaining the status quo, a potential significant share repurchase, a potential acquisition of a business from a competitor, a potential sale or leveraged buyout, or a merger of equals.

During a regular Board meeting on October 27, 2010, representatives of Providence presented a preliminary expression of interest to acquire SRA at a per share price in the $28

---

[3]    Defendants have requested the mandatory PSLRA certification from plaintiff's attorneys, who indicated that the certification would be forthcoming, but have not yet provided it as of this filing.

range.  The next day, the Board terminated the strategic alternatives study team, and established a special committee consisting of five independent and disinterested directors (the "Special Committee") to continue the process.  The Special Committee retained Houlihan Lokey Capital, Inc. ("Houlihan Lokey") as financial advisors and Kirkland & Ellis LLP as legal advisors.

The Special Committee and its advisors controlled negotiations with Providence and other potential bidders.  In December 2010, a company identified in SRA's Preliminary Proxy as Strategic Bidder A submitted an unsolicited expression of interest in the range of $29-31, while in January 2011, Providence submitted an indication of interest at $27.25.

On January 10, after Dow Jones reported that SRA's share price had recently risen 19% on speculation that the Company was up for sale, the Special Committee authorized Houlihan Lokey to begin contacting various strategic and financial bidders.  Between January 19 and February 9, the Company entered into confidentiality agreements with three strategic bidders and five additional financial bidders, besides Providence.

The Special Committee received various non-binding expressions of interest, and eventually received two formal written proposals, from Providence and a company identified as Financial Bidder A, both at $30 per share.  After intense negotiations, the Special Committee met on March 30 to evaluate the latest offers.  Through negotiations that day, Financial Bidder A raised its bid to $31.25 per share.  Providence raised its offer to $30.50 share, with the requirement that Dr. Volgenau agree to roll over $150 million of his equity position in SRA, such that Dr. Volgenau would have $120 million in equity in the new company, and a $30 million loan to the new company that Providence would pay back if and only if it was able to sell two of SRA's subsidiaries.

SRA agreed to negotiate exclusively with Financial Bidder A until 3:00 pm on March 31. At approximately 3:40 pm that day, Providence submitted an increased, unsolicited bid of $31.25 per share with the same rollover structure.  Both Financial Bidder A and Providence were then directed to submit their best and final offers.  That evening of March 31, Financial Bidder A withdrew from the sale process, leaving Providence's offer as the sole remaining offer.  Houlihan Lokey then provided an opinion that the offer from Providence was fair to SRA's stockholders from a financial perspective, and the Special Committee unanimously voted to recommend the proposed transaction with Providence.  The Board met and voted unanimously (with Dr. Volgenau abstaining) to sign the definitive Merger Agreement and recommend the Merger to SRA's stockholders.  SRA and Providence announced the Merger the morning of April 1, 2011, prior to the opening of the financial markets.

Under the terms of the Merger Agreement, Providence has agreed to purchase all outstanding shares of SRA for $31.25 per share.  That price represents a 10.2% premium over the common stock price of $28.36 at which it closed on March 31, 2011, the day before the Merger was announced.  More significantly, the Merger price represents a 52.8% premium over the Company's "unaffected" closing stock price on December 31, 2010, before the stock price was affected by January 2011 press reports speculating that SRA was for sale.

As a condition of closing, the holders of a majority of all minority shares (*i.e.*, excluding Dr. Volgenau) must vote in favor of the transaction.  The Merger also provides that immediately following the execution of the Merger Agreement, during a 30-day "go-shop" period, the Company and its advisors could actively solicit alternate bidders, and if the Special Committee received a superior proposal (either before or after the go-shop period), it could change its recommendation and endorse the new proposal over Providence's offer.  Further, while the

Merger Agreement contains a termination fee payable to Providence of $28 million (during the go-shop period) or $47 million (after the go-shop period), in the event that Providence terminates the Merger, SRA is entitled to a $112.9 million "reverse" breakup fee.

SRA submitted the Preliminary Proxy to the SEC for its review and approval on April 15, 2011.  Under the current transaction schedule a stockholder vote is not expected until mid to late July 2011 at the earliest.

> **C.** *SEPTA* **and This Action Are Substantially the Same**

On April 7, 2011, the Southeastern Pennsylvania Transportation Authority filed a putative class action lawsuit in the Delaware Court of Chancery (captioned *S.E. Pa. Transp. Auth. v. Volgenau, et. al*, C.A. No. 6354-VCN (Del. Ch.)) against SRA, its directors, and Providence (including certain other entities involved in the Merger).  The amended complaint, filed after SRA submitted its Preliminary Proxy to the SEC, generally alleges: (1) that the Board breached its fiduciary duties by, among other things, failing to take steps to maximize the merger consideration, conveying payments to existing officers of the Company, Providence, and the Sterling Merger Subsidiaries at the unfair expense of the public stockholders, and failing to disclose purportedly material information to stockholders in the Preliminary Proxy; (2) that Dr. Volgenau breached his duty of loyalty in planning, structuring, and timing the merger; and (3) that the Company, Providence, and the Sterling Merger Subsidiaries aided and abetted these purported breaches of fiduciary duties.  The *SEPTA* complaint seeks to enjoin the merger or, in the event the merger is completed, seeks to rescind the merger or recover money damages on behalf of the Company's stockholders.  The Plaintiff in *SEPTA* has moved for expedited discovery, as well for certification of the class it purports to represent.

On April 25, 2011, 18 days after the original complaint in *SEPTA*, plaintiff Andrei Sinioukov filed the instant action.  The next day he filed an "emergency" motion for expedited

discovery.   Mr. Sinioukov is represented by different counsel, but his allegations are

substantially identical to those in *SEPTA*.  Plaintiff also claims that the process SRA undertook

in connection with the proposed transaction was inadequate; that defendant Volgenau breached

his duty of loyalty to SRA; and that the disclosures in SRA's preliminary proxy statement are

allegedly inadequate.  Plaintiff also alleges breach of fiduciary duties and aiding and abetting

breach of fiduciary duties, and also seeks to represent a class of SRA stockholders.  The only

putative difference between this action and the *SEPTA* suit is that plaintiff here has also brought

a claim under section 14(a) of the 1934 Exchange Act (and section 20(a), for control person

liability), on the theory that SRA's preliminary proxy statement—which has not yet been

approved by the SEC and has not yet been mailed to stockholders—is allegedly misleading.

As even a cursory review of the complaints reveals, *SEPTA* and plaintiff's complaint here

are duplicative.  The following chart summarizes the salient features of each suit, and makes

plain that the two suits involve the same parties (with *SEPTA* naming more corporate entities

involved in the Merger than this suit), make the same allegations, and seek the same relief.

| Compl,. *Se. Pa. Transp. Auth. v. Dr. Ernst Volgenau, et al.,* No. 6354 (Del. Ch. filed Apr. 7, 2011) | Compl,. *Sinioukov v. SRA Int'l, Inc., et. al.,* No. 1:11cv447 (E.D. Va. Apr. 25, 2011) (Dkt. No. 1) |
|---|---|
| Named Defendants:<br>• Corporate Defendants: SRA International, Inc., Providence Equity Partners LLC, Providence Equity Partners VI L.P., Providence Equity Partners VI-A L.P., Sterling Parent Inc., Sterling Merger Inc. and Sterling Holdco Inc.<br><br>• Individual Defendants: Dr. Ernst Volgenau, John W. Barter, Larry R. Ellis, Miles R. Gilburne, W. Robert Grafton, William T. Keevan, Michael R. Klein and Dr. Gail R. Wilensky | Named Defendants:<br>• Corporate Defendants: SRA International, Inc., Providence Equity Partners LLC, Sterling Parent Inc. and Sterling Merger Inc.<br><br><br><br>• Individual Defendants: Dr. Ernst Volgenau, John W. Barter, Larry R. Ellis, Miles R. Gilburne, W. Robert Grafton, William T. Keevan, Michael R. Klein and Dr. Gail R. Wilensky |

| | |
|---|---|
| Allegations concerning Volgenau:<br><br>• Volgenau owns approximately 11.8 million shares of SRA common stock, which represents 20% of total shares outstanding and 71% of the voting power. (SEPTA Am. Compl. ¶ 42.)<br><br>• Volgenau is a controlling shareholder of SRA. (*Id.* ¶¶ 42-44.)<br><br>• Volgenau will remain Chairman and will retain a significant equity stake in the new entity. (*Id.* ¶ 2.)<br><br>• Volgenau has agreed to vote all of his shares in favor of the transaction with Providence. (*Id.* ¶¶ 2, 76.) | Allegations concerning Volgenau:<br><br>• Volgenau owns over 11 million shares of SRA common stock, which represents approximately 20% of total shares outstanding and 71% of aggregate voting rights. (Sinoukov Compl. ¶ 5.)<br><br>• Volgenau is a controlling shareholder of SRA. (*Id.* ¶ 5.)<br><br>• Volgenau will remain Chairman and will enjoy a substantial equity stake in the new entity. (*Id.* ¶ 5.)<br><br>• Volgenau has agreed to vote all of his shares in favor of the transaction with Providence. (*Id.* ¶¶ 5, 10, 46.) |
| Allegations concerning the process leading to the transaction:<br><br>• Volgenau and Providence steered the process to favor their own interests. (*Id.* ¶ 2.)<br><br>• Providence received access to SRA's confidential information and had nearly nine months of near-exclusive discussions with Volgenau. (*Id.* ¶ 49.)<br><br>• SRA did not engage strategic bidders in preliminary discussions. (*Id.* ¶ 56-57.)<br><br>• The process was narrowed down to Providence and another financial bidder. (*Id.* ¶ 59.) | Allegations concerning the process leading to the transaction:<br><br>• SRA's Board, vis-à-vis Volgenau, steered the shopping process in favor of Providence. (*Id.* ¶ 3.)<br><br>• SRA provided Providence with financial projections and management forecasts which it did not provide to other suitors. (*Id.* ¶ 44.)<br><br>• SRA spurned all strategic bidders. (*Id.* ¶ 44).<br><br>• The process was narrowed down to Providence and another financial bidder. (*Id.* ¶ 45.) |
| Allegations concerning the Preliminary Proxy Statement:<br><br>• The Preliminary Proxy Statement is false and materially misleading with respect to:<br><br>  • Financial information given to Providence and other bidders (*id.* ¶¶ 92-93); | Allegations concerning the Preliminary Proxy Statement:<br><br>• The Preliminary Proxy Statement is false and materially misleading with respect to:<br><br>  • Financial information given to Providence and other bidders (*id.* ¶ 48(a)); |

| | |
|---|---|
| • Details concerning Volgenau's option (*id.* ¶ 98); | • Details concerning Volgenau's option (*id.* ¶ 48(b)); |
| • Houlihan Lokey's potential conflicts of interest (*id.*¶ 99); and | • Houlihan Lokey's potential conflicts of interest (*id.*¶ 48(e)); and |
| • Details concerning negotiations with Providence and other bidders (*id.* ¶ 94). | • Details concerning negotiations with Providence and other bidders (*id.* ¶ 48(f)). |
| <u>Allegations concerning the Merger Agreement</u>:<br>• The Merger Agreement contains "no shop" restrictions on the ability to initiate, solicit, or encourage alternative acquisition proposals from third parties and to provide nonpublic information to third parties regarding alternative acquisition proposals. (*Id.* ¶ 46.) | <u>Allegations concerning the Merger Agreement</u>:<br>• The Merger Agreement provides Providence with information and matching rights that dissuade a potential topping bid. (*Id.* ¶ 46.) |
| <u>Common Causes of Action</u>:<br>• Breach of fiduciary duty (against the individual defendants). (*Id.* ¶¶ 100-106.)<br>• Aiding and abetting breach of fiduciary duty (against Providence). (*Id.* ¶¶ 112-115.) | <u>Common Causes of Action</u>:<br>• Breach of fiduciary duty (against the individual defendants). (*Id.* ¶¶ 50-57.)<br>• Aiding and abetting breach of fiduciary duty (against Providence). (*Id.* ¶¶ 58-65.) |
| <u>Common Relief sought</u>:<br>• Determining that this action is a proper class action.  (*Id.* at p. 38.)<br>• Declaring that the transaction is in breach of defendants' fiduciary duties, and any agreement arising therefrom is unlawful and unenforceable.  (*Id.* at p. 39.)<br>• Enjoining the transaction. (*Id.* at p. 39.)<br>• Rescinding the transaction, to the extent consummated.  (*Id.* at p. 39.)<br>• Costs and disbursements, including attorneys' fees and experts' fees.  (*Id.* at p. 39.) | <u>Common Relief sought</u>:<br>• Declaring that the action is properly maintainable as a class action. (*Id.* at p. 22.)<br>• Declaring that the transaction was entered into in breach of defendants' fiduciary duties, and is unlawful and unenforceable. (*Id.* at p. 22.)<br>• Enjoining the transaction.  (*Id.* at p. 22.)<br>• Rescinding the transaction, to the extent implemented.  (*Id.* at p. 23.)<br>• Costs and disbursements, including attorneys' fees and experts' fees.  (*Id.* at p. 23.) |

| | |
|---|---|
| • Such other and further equitable relief as the Court may deems appropriate.  (*Id.* at p. 40.) | • Such other and further equitable relief as the Court may deem just and proper.  (*Id.* at p. 23.) |

## ARGUMENT

## THE COURT SHOULD STAY THE PRESENT ACTION IN FAVOR OF *SEPTA* AS THE PRIOR-FILED ACTION

### A.     The present action presents the same issues as the *SEPTA* action, requests the same relief, and seeks to represent the same proposed class of plaintiffs

This case should be stayed in favor of the first-filed *SEPTA* action, as the issues, requests for relief, and proposed class of plaintiffs are virtually the same.  The Court's authority to stay a subsequently-filed case derives from its inherent supervisory power.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").  A stay is implicit in the power to manage the court's own docket.  *See PBM Nutritionals, LLC v. Dornoch Ltd.*, 667 F. Supp. 2d 621, 631 (E.D. Va. 2009) ("A motion to stay . . . is a power inherent in the courts 'under their general equity powers and in the efficient management of their dockets.'" (quoting *Williford v. Armstrong World Indus., Inc.,* 715 F.2d 124, 127 (4th Cir. 1983))).  As the Supreme Court held in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976), a federal court may abstain from exercising its jurisdiction in favor of concurrent and parallel state proceedings where doing so would serve the interests of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation."

Under the "first-filed" or "first-to-file" rule, the court first to obtain jurisdiction generally "should have priority."  *See Ellicott Mach. Corp. v. Modern Welding Co., Inc.,* 502 F.2d 178, 180 n.2 (4th Cir. 1974) (quoting *Mattel, Inc. v. Louis Marx & Co.,* 353 F.2d 421, 423 (2d Cir.

1965)).  In such circumstances, the subsequently-filed case should be stayed pending resolution

of the first-filed action.  *See Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*,

123 F. Supp. 2d 514, 519 (D.S.D. 2000) (staying subsequently-filed federal action in favor of

first action filed in Delaware Court of Chancery).  "In considering whether to apply the first to

file rule, the Court must determine if the two pending actions in question are so duplicative or

involve such substantially similar issues that one court should decide the subject matter of both

actions."  *Old Republic Nat'l Title Ins. Co. v. Transcon. Title Co.*, 1:07-CV-525, 2007 WL

2915171, at *3 (E.D. Va. Oct. 4, 2007) (internal quotation omitted).

    The claims asserted in this action are the subject of a prior-filed action.  Both cases arise

out of the same transaction, and seek to adjudicate the same fundamental questions on behalf of

the same constituency (SRA's stockholders).  All the defendants in the present suit are included

in the *SEPTA* action, and the claims and underlying facts are substantially identical to those at

issue in *SEPTA*, all arising out of a common nucleus of operative facts: the proposed merger.

Finally, both actions seek the same essential relief: an injunction against consummation of the

merger, rescission of prior merger-related actions purportedly taken in violation of fiduciary

duties, and related remedies.  Accordingly, the *SEPTA* action, if successful, would afford

Plaintiff (and the putative class) everything sought in the present lawsuit.

    The presence of claims under sections 14(a) and 20(a) of the 1934 Exchange Act does not

undermine the parallel nature of the actions, as the claims are merely an attempt to avoid a stay

in favor of the earlier filed *SEPTA* action, a tactic that other courts have rejected.  As a notable

example, Judge Brinkema recently stayed an action pending in this Court that had alleged claims

brought under section 14(a) of the 1934 Exchange Act (as well as breach of fiduciary duty

claims), when a parallel action in the Delaware Court of Chancery was challenging the same

11

potential merger.  *See Cohen v. Hillman, et al.*, No. 1:10cv237, Order & Hr'g Tr. (E.D. Va. Apr.

30, 2010) (attached as Exhibit A).  In granting the motion notwithstanding the presence of the

section 14(a) claim, Judge Brinkema reasoned that "staying the case makes absolutely good

sense," and observed that "[t]his Court is very conservative when it comes to using judicial

resources when there's parallel litigation going on."  (*Cohen*, No. 1:10cv237, Hr'g Tr. at 15:8-

11.)  Judge Brinkema continued that the "Delaware case is ahead of this case, does address the

core issues that are at issue in this case, and that case ought to be allowed to go forward."  (*Id.* at

15:12-14.)

Other courts similarly have stayed federal suits where the securities claims pled are

duplicative of the breach of fiduciary duty claims in parallel Delaware proceedings and arose out

the same merger transaction.  *See Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) ("Just as

the parallel nature of the actions cannot be destroyed by simply tacking on a few more

defendants, neither can it be dispelled by repackaging the same issue under different causes of

action."); *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273, at *4-*6

(N.D. Ill. Aug. 27, 1996).  In *Jensen*, the court stayed a section 14(a) claim under circumstances

similar to those here, holding:

> Delaware common law recognizes claims based on material misstatements or
> omission in proxies, similar to those brought under § 14(a) of the 1934 Act . . . .
> [the plaintiff] could have, therefore, if it chose, ***brought these very same claims
> which it makes here [in federal court] in Delaware court based on Delaware
> law.***

*Jensen*, 1996 WL 494273, at *4 (emphasis added).[4]

---

[4]  *See also Arrow Concrete Co. v. Ohio Farmers Ins. Co.*, 981 F. Supp. 443 (S.D. W.V. 1997)
(staying federal case that included a claim under the Miller Act, over which federal courts
have exclusive jurisdiction, in favor of previously filed state court case); *Avmed, Inc. v.
Sheridan Healthcorp, Inc.*, No. 09-23851-Civ, 2010 WL 3008811, at *7 (S.D. Fla. July 28,
2010) (where "state law is substantially similar to and provides for the same relief as the

Moreover, while plaintiff made a tactical decision to add section 14(a) and 20(a) claims in an effort to gain a federal forum and differentiate his action from *SEPTA*, he must take the bitter with the sweet.  The PSLRA requires an involved process for appointment of lead plaintiffs in putative securities class actions:  the first plaintiff to file a securities class action must circulate a notice within 20 days of the complaint, any class member seeking lead plaintiff status must file a motion within 60 days of the notice's circulation, and a court must issue an order appointing lead plaintiff and lead class counsel within 90 days of the notice.  *See* 15 U.S.C. § 78u-4(a)(3)(B).  This process applies to class actions involving section 14(a) and 20(a) claims, *see California Public Employees' Retirement System v. Chubb Corp.*, 127 F. Supp. 2d 572, 576 (D.N.J. 2001), *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001), and other courts have stayed proceedings until the lead plaintiff process is completed, *see In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006) ("Until such time as the publication of notice and selection of lead plaintiff is made, the case will be stayed.").

What is more, the PSLRA mandates a stay of discovery pending resolution of motions to dismiss securities claims.  *See* 15 U.S.C. § 78u-4b(3)(B) ("In any private action arising under [the 1934 Exchange Act], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . .").  This stay encompasses not only plaintiff's sections 14(a) and 20(a) claims but also the related state claims that plaintiff has brought, *see SG Cowen*

---

federal law, federal courts have abstained in favor of a state proceeding"); *Klein v. Walston & Co.*, 432 F.2d 936, 937 (2d Cir. 1970) (holding that stay of Security Exchange Act claim pending final determination of concurrent state action was appropriate); *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987, 993-94 (S.D.N.Y. 1990) (staying exclusively federal section 10(b) claim in favor of state court action).

Furthermore, plaintiff's section 20(a) control person liability claim is merely derivative of his section 14(a) claim, *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 628 (4th Cir. 2008), and therefore supplies no reason for this suit to be litigated given the pending *SEPTA* case.

*Sec. Corp. v. U.S. Dist. Court,* 189 F.3d 909, 913 n.1 (9th Cir. 1999) ("Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims.") (quotations omitted), and applies even though defendants have not yet, but intend to, move to dismiss, *see In re DPL, Inc. Sec. Litig.*, 247 F. Supp. 2d 946, 947 n.4 (S.D. Ohio 2003) (PSLRA discovery stay applied where defendants "indicated that they anticipate moving to dismiss"); *In re Trump Hotel S'holder Derivative Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *2 (S.D.N.Y. Aug. 5, 1997) (PSLRA discovery stay applied to claims under section 14 of the 1934 Exchange Act and to state law claims, where defendants anticipated moving to dismiss).

In short, the underlying substance of plaintiff's proxy disclosure claims also will be adjudicated by a Delaware court applying Delaware law in the *SEPTA* action—but the Delaware plaintiff will not face the PSRLA lead plaintiff process or stay of discovery. Thus, the Court should stay this case in favor of *SEPTA*.

### B.    A stay would avoid unnecessary duplication of efforts and the risk of inconsistent results

A stay also would avoid the duplication of efforts that would result from allowing these actions to proceed on parallel tracks. "[L]awsuits are duplicative where a determination in one action leaves little or nothing to be determined in the other." *Fisher v. Rite Aid Corp.*, Civ. A. No. RDB-09-1909, 2010 WL 2332101, at *3 (D. Md. June 8, 2010) (internal quotation marks omitted); *see also Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) ("The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources."); *Medlock v. HMS Host USA, Inc.*, No. CVF10-2167 CJO GSA, 2010 WL 5232990, at *7 (E.D. Cal. Dec. 16, 2010) (transferring a later-filed class action,

seeking to represent the same class of employees, with "substantial overlap" of claims, in the interest of "sound judicial administration, conservation of judicial resources, comprehensive disposition of litigation, and efficiency").  Given the substantial overlap between these two cases, the resolution of *SEPTA* will plainly be determinative of *Sinioukov* as well.   There is, accordingly, no good reason for both cases to proceed.

By contrast, there are many good reasons for both cases *not* to proceed simultaneously. As the Delaware Court of Chancery recently recognized in this exact context, "[t]he potential problems" arising from multi-forum lawsuits challenging the same proposed merger "are numerous."  *See In re Allion Healthcare Inc. S'holder Litig.*, No. Civ. A. 5022-CC, 2011 WL 1135016, at *4-*5 (Del. Ch. Mar. 29, 2011) (attached as Exhibit C).  "Defense counsel is forced to litigate the same case—often identical claims—in multiple courts."  *Id.*  "Judicial resources are wasted as judges in two or more jurisdictions review the same documents and at times are asked to decide the exact same motions."  *Id.*  "Worse still, if a case does not settle or consolidate in one forum, there is the possibility that two judges would apply the law differently or otherwise reach different outcomes, which would then leave the law in a confused state and pose full faith and credit problems for all involved."  *Id.*  Each of these concerns is manifest here.  If both cases are allowed to proceed, then both the Delaware Court of Chancery *and* this Court will incur the burden and expense of handling likely contentious litigation.  And, of course, the Defendants will be forced to litigate the exact same issues in two different courts.

There is also the possibility that the Delaware Court of Chancery and this Court will reach different results on identical issues.  *See id.*  Remarkably, both SEPTA in its complaint, and Mr. Sinioukov in his complaint, identified this risk.  As SEPTA pled:

> ***The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to***

> ***individual members of the Class, which would establish incompatible standards
> of conduct for Defendants,*** or adjudications with respect to individual members
> of the Class, which would as a practical matter be dispositive of the interests of
> the other members not parties to the adjudications or substantially impair or
> impede their ability to protect their interests.

(*SEPTA* Compl. ¶ 26 (emphasis added).)  Similarly, Mr. Sinioukov pled:

> ***The prosecution of separate actions by individual members of the Class would
> create a risk of inconsistent or varying adjudications with respect to individual
> members of the Class which would establish incompatible standards of conduct
> for the party opposing the Class.***

(*Sinioukov* Compl. ¶ 34 (emphasis added).)

Because both *SEPTA* and *Sinioukov* seek like forms of relief and hinge on the outcome of

the same legal and factual issues, they are functionally identical for purposes of the first-filed

rule.  By application of that rule—not to mention judicial economy, comity, and common

sense—this case should be stayed in favor of *SEPTA* as the prior-filed action.

**CONCLUSION**

For the foregoing reasons, the SRA Defendants respectfully request that the Court stay this case pending disposition of *SEPTA v. Volgenau, et al.*, C.A. No. 6354-VCN, Delaware Court of Chancery.

Date:   May 5th, 2011                                    Respectfully submitted,


/s/ Craig C. Reilly
Craig C. Reilly (VSB #20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL    (703) 549-5354
FAX    (703) 549-2604
EMAIL craig.reilly@ccreillylaw.com

*Counsel for SRA International, Inc., John W.*
*Barter, Larry R. Ellis, Miles R. Gilburne,  W.*
*Robert Grafton, William T. Keevan, Michael*
*R. Klein, Dr. Stanton D. Sloane, and Dr. Gail*
*R. Wilensky*

*Of Counsel:*

James P. Gillespie
Robert B. Gilmore
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
TEL (202) 879-5000
FAX (202) 879-5200

17

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of May 2011, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system, with electronic notification of such filing to the following counsel of record or by email (*):

Steven B. Gould
Jesse D. Stein
BROWN & GOULD, LLP
7700 Old Georgetown Rd.
Suite 500
Bethesda, MD 20814
*Counsel for Plaintiff*

ROBBINS GELLER RUDMAN*
& DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
*Counsel for Plaintiff*

ROBBINS GELLER RUDMAN*
& DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101
*Counsel for Plaintiff*

Maeve O'Connor *
moconnor@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
*Counsel for Defendants Providence Equity Partners LLC, Sterling Parent Inc., and Sterling Merger Inc.*

John C. Millian *
jmillian@gibsondunn.com
GIBSON DUNN & CRUTCHER
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
*Counsel for Defendant Dr. Ernst Volgenau*

JOHNSON BOTTINI, LLP*
FRANK A. BOTTINI
501 W. BROADWAY, SUITE 1720
SAN DIEGO, CA 92101
*Counsel for Plaintiff*

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:    (703) 549-5354
FAX:    (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for defendants SRA International, Inc., John W. Barter, Larry R. Ellis, Miles R. Gilburne, W. Robert Grafton, William T. Keevan, Michael R. Klein, Dr. Stanton D. Sloane, and Dr. Gail Walensky*