# Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHULY COHEN, | ) |
| Plaintiff, | ) |
| v. | ) 1:10cv237 (LMB/TCB) |
| LEE HILLMAN, et al., | ) |
| Defendants. | ) |

ORDER

For the reasons stated in open court, plaintiff's Motion for Preliminary Injunction or, in the Alternative, for Expedited Discovery [42] is DENIED and plaintiff's Motion to Shorten Time for Briefing [45] is DENIED as moot. Defendants' Motions to Stay [18] and for Joinder [22] are GRANTED. Accordingly, it is hereby

ORDERED that this action be and is stayed indefinitely in all respects, and it is further

ORDERED that counsel keep the Court informed of the status of the related Delaware case.

The Clerk is directed to remove this civil action from the active docket of the Court and forward copies of this Order to counsel of record.

Entered this 30th day of April, 2010.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

## Page 1

```
           UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                  ALEXANDRIA DIVISION

SHULY COHEN, individually and    .
on behalf of all others          .    Civil Action No. 1:10cv237
similarly situated,              .
                                 .
              Plaintiff,          .
                                 .
      vs.                        .    Alexandria, Virginia
                                 .    April 30, 2010
LEE HILLMAN; PETER AQUINO;       .    10:40 a.m.
JOSE CECIN, JR.; BENJAMIN        .
DUSTER IV; DANIEL TSEUNG;        .
CHARLES LEVINE; CASIMER          .
SKRZYPCZAK; KURT CELLAR;         .
RCN CORPORATION; YANKEE CABLE    .
ACQUISITION, LLC; YANKEE         .
METRO PARENT, INC.; and          .
YANKEE METRO MERGER SUB, INC.,   .
                                 .
              Defendants.         .
                                 .
. . . . . . . . . . . .

                TRANSCRIPT OF MOTIONS HEARING
           BEFORE THE HONORABLE LEONIE M. BRINKEMA
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:           ERIC M. ANDERSEN, ESQ.
                             Levi & Korsinsky, LLP
                             30 Broad Street, 15th Floor
                             New York, NY 10004

FOR THE RCN DEFENDANTS:      MICHAEL K. LOWMAN, ESQ.
                             Jenner & Block LLP
                             1099 New York Avenue, N.W.
                             Suite 900
                             Washington, D.C. 20001

        (APPEARANCES CONT'D. ON FOLLOWING PAGE)

                       (Pages 1 - 16)

       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
```

## Page 2

```
APPEARANCES:  (Cont'd.)

FOR THE YANKEE DEFENDANTS:   JOHN J. TUMILTY, ESQ.
                             Edwards Angell Palmer & Dodge LLP
                             111 Huntington Avenue
                             Boston, MA 02199
                                and
                             BRENDAN D. O'TOOLE, ESQ.
                             Williams Mullen
                             1021 East Cary Street
                             P.O. Box 1320
                             Richmond, VA 23218-1320

OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Fifth Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595
```

## Page 3

P R O C E E D I N G S

THE CLERK: Civil Action 10-237, Shuly Cohen v. Lee Hillman, et al. Would counsel please note their appearances for the record.

THE COURT: All right, counsel?

MR. LOWMAN: Good morning, Your Honor. Michael Lowman from Jenner & Block on behalf of the RCN defendants, which is RCN Corporation and the individuals who make up its officers and directors.

THE COURT: All right. Are there other counsel here with you?

MR. LOWMAN: No, Your Honor. I am here by myself on behalf of my clients.

THE COURT: All right. And your clients are here?

MR. LOWMAN: No, Your Honor. We have other defendants.

THE COURT: I'm sorry. Of course you do. Yankee defendants, right? All right.

MR. LOWMAN: Yes, Your Honor.

MR. O'TOOLE: Good morning, Judge Brinkema. Brendan O'Toole from Williams Mullen in Richmond. We are local counsel for the three Yankee defendants. Lead counsel is Mr. John Tumilty, who was admitted pro hac vice earlier this month, and he's here today from Boston.

THE COURT: All right, very good. Nice to see you.

MR. TUMILTY: Good morning, Your Honor.

## Page 4

THE COURT: Good morning.

And for the plaintiff?

MR. ANDERSEN: Good morning, Your Honor. My name is Eric Andersen on behalf of plaintiff, Shuly Cohen.

THE COURT: All right, this matter is before the Court on the motion to stay of the RCN and Yankee defendants. There's also a motion for preliminary injunction or in the alternative for expedited discovery, which, of course, would be moot if the Court grants the motion to stay.

I'd like the plaintiff to address the issue that the -- there is no longer a preliminary proxy, but as I understand now, the definitive proxy has been filed, and the defendants make much of the fact that your complaint and your claims are addressed to the preliminary but not to the final document.

MR. ANDERSEN: Yes, Your Honor. There was a definitive proxy released, and what we provide, Your Honor, is a black line of differences between the two documents, and if you see the differences, there are not that many, and so that's why, that's why, Your Honor, Your Honor can rule on the motion for preliminary injunction at this point based on the fact --

THE COURT: I'm not going to rule on the motion for preliminary injunction. Do you understand you've cited the wrong standard to the Court? *Blackwelder* hasn't been good law on the issue of preliminary injunctions for many months.

MR. ANDERSEN: Yes, Your Honor, I saw that, but the

5

thing is is the differences in the standard doesn't affect the result in this case.

THE COURT: Why do you say that?

MR. ANDERSEN: Your Honor, the case in Delaware hasn't been looked at by a judge yet. There's been many papers filed in that case, okay, but there has not been a status conference or hearing in that case, and this case has already been settled, okay?

THE COURT: Whoa, whoa, whoa, whoa, whoa. It's been settled. Now, that's a class action. Isn't it also in Delaware?

MR. ANDERSEN: Yes, Your Honor.

THE COURT: So there's another group of stockholders who are apparently completely comfortable with or have been able to be satisfied because they've given up that case; it settled.

MR. ANDERSEN: There's an MOU that has been prepared. The final documents haven't been given to the vice chancellor. So there has been no judicial oversight of the settlement, and that is the problem. That's why we're here, Your Honor, ultimately is because no depositions have been taken in this case. Documents haven't been received from Deutsche Bank.

And so, Your Honor, this case has been settled very hastily, and all we want, Your Honor, is if Your Honor is not prepared to issue a preliminary injunction, is just to provide us the same documents that the plaintiffs got in the Delaware case, and in addition --

6

THE COURT: Well, why didn't you join that case?

MR. ANDERSEN: Excuse me?

THE COURT: Why didn't you try to enter that case?

MR. ANDERSEN: Your Honor, we filed here because we are entitled to additional federal claims under section 14(a) of the Securities Act, specifically 14a-9. So we're entitled to more claims here and have a better shot of getting the requested relief here than in Delaware.

THE COURT: Well, how do you respond to the argument that the defendants are making that if this case were to go forward and if this Court were to grant preliminary injunction relief, it could scuttle what appears to be a, at least based on the defendants' papers, a relatively sound offer from a potential purchaser and that it could potentially scuttle that deal, costing other shareholders significant amounts of money?

MR. ANDERSEN: Yes, Your Honor. I reviewed the merger agreement, and this is what the merger agreement actually says. The deal -- the termination of this deal if it doesn't close is September 4, 2010. So, Your Honor, we have a lot of breathing room. I mean, nothing has to happen right now, okay?

So if Your Honor issues a temporary order, a preliminary injunction that allows me to have access to documents, the deal is not busted up, and ABRY doesn't have the opportunity to go away.

THE COURT: But because this is a proxy, I mean, your clients, whatever stockholders or shareholders you represent, are

7

getting access to the nuts and bolts. Isn't it -- it's a multipage proxy as I understand it, isn't it?

MR. ANDERSEN: Yes. It's a multipage proxy, Your Honor, but there are problems with the disclosures. I mean, you can, you can write thousands and thousands of pages about nothing, okay? And that's the problem is is there are certain disclosures that we believe are problems.

We also have damages claims for price of the $15 that are being provided to the shareholders, and the settlement that is -- has been signed takes that away. This case is being settled on just revising disclosures, and my client will then have no ability to go in any court to continue to press his claims for price and receive damages if the Court determines that the company is worth, more valuable than $15.

THE COURT: Now, how many shares does your, does your client hold?

MR. ANDERSEN: 100, Your Honor.

THE COURT: 100 shares?

MR. ANDERSEN: Yes, Your Honor.

THE COURT: And there are how many hundreds of thousands or millions of shares outstanding?

MR. ANDERSEN: I don't know the exact figure.

THE COURT: Well, there was a calculation as to what the bond would cost you if you were to get the injunction, because again, the potential risk here is that if an injunction were

8

entered and if the deal goes south as a result of the delay or the fear of litigation and it doesn't happen, rather than $15 per share, there was some other number that apparently had been floated around earlier.

MR. ANDERSEN: Yes, Your Honor. I saw those numbers and those hypothetical calculations of what potentially could be the good faith determination of what a potential bond is, Your Honor. We can argue about bond issues here today.

I can tell Your Honor our firm's prepared to enter any size bond that you enter in this action. So if Your Honor believes that we will likely prevail on the merits and you're prepared to issue an injunction and what's holding you back is the bond, we're prepared to put up any size bond.

THE COURT: All right, somebody from the defense team give the Court an idea as to how many shareholders we're talking about in that community of --

MR. LOWMAN: Your Honor, we're looking at based on what we were able to put together as of record when we filed the paper was over 35 million shares of stock outstanding.

THE COURT: All right, but how -- do you know how many actual shareholders that represents?

MR. LOWMAN: No, Your Honor, because based on experience back when I was at the commission, it's almost impossible to figure out how many, you know, how many shareholders there are, because most of these shares will be held in street name, they'll

9

```
 1  be held by DTC.  You know, you don't have official --
 2          THE COURT:  Are there any -- to your knowledge, are
 3  there any pension funds or large groups like that that are
 4  shareholders in this instance?
 5          MR. LOWMAN:  I have -- you know, I can only speculate,
 6  Your Honor.  We have -- I have no personal knowledge of that, but
 7  it is a substantial corporation.  It would not surprise me that
 8  based on -- that you're going to have those type of institutional
 9  investors holding this security.
10          THE COURT:  Are there classes of shareholders in this
11  universe of shareholders as well?
12          MR. LOWMAN:  I mean, as far as preferred shares and --
13          THE COURT:  Yeah.
14          MR. LOWMAN:  You know, that -- I believe we're just
15  talking about one class of common, Your Honor.
16          THE COURT:  Because, you know, the other problem is
17  there's absolutely been no determination as to whether this
18  plaintiff would be a proper representative of a class.  100 shares
19  is de minimis compared to 35 million, which gives this Court huge
20  concerns.
21          Most of the class action security cases we get down
22  here, and we don't get that many -- as many as New York or
23  probably Delaware, but the people who are coming in asking to
24  represent a class have a significant stake in the shareholding
25  population.
```

10

```
 1          MR. LOWMAN:  I'm aware of that, Your Honor, and I've
 2  been in front of Your Honor in those type of cases.
 3          To give you a -- there were some questions raised
 4  about -- by plaintiff here that I just wanted to address, and part
 5  of it goes to the exceptional circumstances of the case and the
 6  status of where the cases are.  Plaintiff would make, make it seem
 7  like that this was sort of this back closet deal, that nothing got
 8  done, no judicial involvement.  If you just look at the, how this
 9  case evolved, these cases were only filed three days apart.
10          THE COURT:  And the Delaware case was filed first.
11          MR. LOWMAN:  Was filed first.
12          And -- but even -- you know, just even if you ignore the
13  fact of when they were filed, you had a case that literally within
14  days after the amended -- the original proxy was filed, there was
15  an amended complaint in Delaware.  Therefore, in that case,
16  there's an answer on file in that case.  The plaintiffs in this
17  case lagged two weeks on top of that, no answer in this case here.
18          After -- you know, and then right after they filed the
19  amended complaint, the plaintiffs there promptly filed a motion
20  for expedited discovery.  They filed, they filed a motion for
21  preliminary injunction.  They had an expedited -- they went to the
22  judge -- I'm sorry, not the judge.  They went to Chancellor
23  Strine, and they had entered -- an expedited schedule put in.
24          They went to the court and they had commissions entered
25  and granted by the court to take discovery of Deutsche Bank and
```

11

```
 1  the advisors.  They did the discovery.  Thousands and thousands of
 2  papers were produced in that action to those plaintiffs, and there
 3  is a reason why we have a settlement that deals with disclosure
 4  and none of the other money.
 5          The other plaintiffs took the time, they took the
 6  initiative, they brought their case forward, and they looked and
 7  they did their homework.  They looked at what the sales process
 8  was.  They looked at what was required and what was there and not
 9  there as to supplement the proxy.
10          So when we issued the defendant a proxy, we didn't do
11  that on our own.  We worked with the plaintiffs in the other case,
12  and as part of the compromise, we put that out.
13          But they also -- it's no secret if, you know, you read
14  the MOU that we filed, the plaintiffs basically made the decision
15  that there was no "there" there with respect to the procedural
16  complaints that are in that case, and so, of course, that's why
17  we're at a situation, you have a company that over the course of
18  one year had either approached or had people approach them, over
19  100 potential buyers of this company, and the officers and
20  directors and the Board of Directors of RCN went above and beyond
21  the calls of duty to make sure that they not only had an
22  objectively fair offer, that's witnessed by the Deutsche Bank, you
23  know, fairness opinion, but it's the best offer that ever came to
24  the table.
25          No other offer here came up to $15 a share, especially
```

12

```
 1  not one that's cash, especially one that didn't have any
 2  contingencies on financing, especially in this economy.  To have a
 3  deal not contingent on financing and have a finance deal in place,
 4  it's -- that's considerable, and that's why we worry about the
 5  risk that, you know, this case gets, gets slowed down, taken off
 6  track, and the merger gets pushed aside.
 7          THE COURT:  Do you have a sense as to how many shares
 8  were represented by the plaintiffs in the Delaware action?
 9          MR. LOWMAN:  I don't know that off the top of my head,
10  Your Honor, but I have -- the complaints are in the -- we did
11  attach the complaints in our papers.
12          THE COURT:  I know you did.  And it's multiple
13  plaintiffs in the Delaware case, isn't it?
14          MR. LOWMAN:  That is correct.  But the other, the other
15  factor, too, and Your Honor sort of touched upon it, while we're
16  staying on the stay and thinking about the exceptional
17  circumstances, and Your Honor kind of touched what I was thinking
18  of when, you know, when I was thinking about this case last night.
19          You know, we're talking about one plaintiff, a small
20  shareholder, and we are looking at -- one of the things that we
21  have to deal with here is look at how they handled this case so
22  far.  When we walk in this court, there's a statue that, you know,
23  the statue that when we walk in this court is not lost upon anyone
24  that walks in this door, you know, Justice Delayed, Justice
25  Denied, and yet we're in the Eastern District of Virginia, which
```

13

1  has one of the reputations as being one of the quickest courts in
2  the country, yet this case is left in the dust and for really no
3  good reason, and so you sort of ask yourself, you know, when you
4  had a chance to move the case forward, didn't do it.
5       In fact, when we wanted to have this hearing here, you
6  know, there was yet again another attempt, a request to delay it
7  another two weeks, which, you know, resulted in a one-week delay,
8  but the problem is, you know, this is a $1.2 billion merger that's
9  going to be up for shareholder approval in three weeks.
10      Now, you know, this is not a contract case where a week
11 or two delay is, you know, is not a big deal.  I mean, these are
12 fast-paced, and there's timelines to be made.
13      Now, the reason I sort of went into this is it's sort
14 of -- I think it's sort of exceptional or one would say
15 extraordinary that you have a purported class plaintiff, someone
16 who wants and strives to want to be a representative of this case,
17 who's in a case that's only been filed three days different, has
18 basically been left in the dust, and, you know, it is so far
19 behind the other case.
20      At some point in time, if Your Honor would allow this
21 case to proceed, you would have to decide is this plaintiff, is
22 this plaintiff's counsel, are they adequate reps for this class,
23 and, you know, I would suggest that based on this record, that
24 these plaintiffs in this potential class of shareholders are being
25 better represented in Delaware.

14

1       THE COURT:  All right.  Well, I've looked at this case.
2  I've looked at the amended complaint in Delaware.  There is
3  significant overlap between the essence of both cases.  There may
4  be a few extra, you know, federal claims in this case, but the
5  heart and soul of both pieces of litigation is the same.
6       I'm completely dissatisfied that there's any proper
7  record at this point that this plaintiff could possibly be a
8  proper class representative.  Again, usually in these class action
9  security cases, that's one of the first issues we have is we --
10 and we usually have competing classes of shareholders, but this
11 case is particularly problematic, because under the new standards
12 for preliminary injunctive relief, plaintiff is not able to make
13 all four of the requirements, and the balance of harms, frankly, I
14 think if one were to use the old *Blackwelder* fashion, would most
15 likely tip in favor of the defendants, not the plaintiff in this
16 case, because of the timing of this transaction, the reality of
17 the current economy, some of the representations made by
18 Mr. Lowman, including the fact that this is a cash settlement,
19 there are no warrants or any of these types of paper things that
20 are often given in these types of transactions, that the
21 shareholders are guaranteed $15 in cash if this deal goes through
22 with, as I understand it, no strings unless I misunderstand the
23 essence of the acquisition.
24      MR. LOWMAN:  No, Your Honor.  And that is one of the
25 things that the board and the special committee who considered

15

1  this really dwelled on is, you know, they weren't getting
2  securities, they weren't getting promises of future value.  It was
3  cash on the barrelhead, and that was a, it weighed heavily upon
4  the factor in the analysis of this merger, Your Honor.
5       THE COURT:  All right.  So, I mean, clearly under the
6  kinds of balancing that we still do in a -- or evaluation that we
7  still do in a request for preliminary injunction, it's just not
8  there.  Moreover, the argument about staying the case makes
9  absolutely good sense.  This Court is very conservative when it
10 comes to using judicial resources when there's parallel litigation
11 going on.
12      The Delaware case is ahead of this case, does address
13 the core issues that are at issue in this case, and that case
14 ought to be allowed to go forward.  So I am going to grant the
15 motion to stay, although, frankly, a motion to dismiss wasn't far
16 away from my thinking, but I think that was all that was being
17 requested, so I'm going to grant the stay at this point, deny the
18 motion for preliminary injunction as well as the motion for
19 expedited discovery.
20      I'll direct the clerk to remove this case from the
21 active docket of the Court and direct counsel to keep us posted as
22 to, No. 1, the progress in Delaware and also your evaluation as to
23 whether the case should even remain on the docket.  Thank you.
24      MR. LOWMAN:  Thank you, Your Honor.
25      MR. TUMILTY:  Thank you, Your Honor.

16

1            (Which were all the proceedings
2              had at this time.)
3
4            CERTIFICATE OF THE REPORTER
5  I certify that the foregoing is a correct transcript of the
6  record of proceedings in the above-entitled matter.
7
8
9                         _____/s/_____
10                          Anneliese J. Thomson