# Exhibit B

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

DEIDRE NOELLE SULLIVAN,            .    Civil Action No. 1:10cv750
Individually and on Behalf of      .
All Others Similarly Situated,     .
                                   .
            Plaintiff,             .
                                   .
      vs.                          .    Alexandria, Virginia
                                   .    July 23, 2010
                                   .    10:00 a.m.
ARGON ST, INC., TERRY L.           .
COLLINS, MAUREEN BAGINSKI,         .
DELORES M. ETTER, JOHN IRVIN,      .
DAVID C. KARLAGAARD, PETER A.      .
MARINO, ROBERT McCASHIN,           .
THOMAS E. MURDOC, S. KENT          .
ROCKWELL, VICTOR F. SELLIER,       .
and LLOYD A. SEMPLE,               .
                                   .
            Defendants.            .
                                   .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              FRANCIS J. MARTORANA, ESQ.
                                O'Donoghue & O'Donoghue LLP
                                4748 Wisconsin Avenue, N.W.
                                Washington, D.C. 20016
                                  and
                                MARK S. REICH, ESQ.
                                Robbins Geller Rudman &
                                Dowd LLP
                                58 South Service Road, Suite 200
                                Melville, NY 11747
                                  and
                                DAVID T. WISSBROECKER, ESQ.
                                655 West Broadway, Suite 1900
                                San Diego, CA 92101-3301

        (APPEARANCES CONT'D. ON FOLLOWING PAGE)

(Proceedings recorded by electronic sound recording, transcript produced by computerized transcription.)

```
 1  APPEARANCES:  (Cont'd.)

 2  FOR THE ARGON DEFENDANTS:        RYAN C. BERRY, ESQ.
                                     DLA Piper LLP (US)
 3                                   1775 Wiehle Avenue, Suite 400
                                     Reston, VA 20190
 4                                     and
                                     DAVID CLARKE, ESQ.
 5                                   ROBIN A. WILLIAMS, ESQ.
                                     DLA Piper LLP (US)
 6                                   500 Eighth Street, N.W.
                                     Washington, D.C. 20004
 7

 8  FOR DEFENDANTS THE BOEING        CRAIG C. REILLY, ESQ.
       COMPANY AND VORTEX            111 Oronoco Street
 9     MERGER SUB, INC.:             Alexandria, VA 22314
                                       and
10                                   CRAIG S. PRIMIS, P.C., ESQ.
                                     DAVID R. DEMPSEY, ESQ.
11                                   Kirkland & Ellis LLP
                                     655 - 15th Street, N.W., Suite 1200
12                                   Washington, D.C. 20005

13
    TRANSCRIBER:                     ANNELIESE J. THOMSON, RDR, CRR
14                                   U.S. District Court, Fifth Floor
                                     401 Courthouse Square
15                                   Alexandria, VA 22314
                                     (703)299-8595
16

17

18

19

20

21

22

23

24

25
```

3

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  Deidre Noelle Sullivan v. Argon ST, Inc., et
 3  al., Case No. 10cv750.
 4          MR. REILLY:  Good morning, Your Honor.  Craig Reilly
 5  here for defendant Boeing -- oh, here are plaintiff's counsel.  If
 6  I may introduce the Court to my cocounsel, Craig Primis?
 7          MR. PRIMIS:  Good morning, Your Honor.
 8          THE COURT:  Good morning.
 9          MR. REILLY:  David Dempsey.
10          THE COURT:  Good morning.
11          MR. DEMPSEY:  Good morning.
12          MR. REILLY:  Their pro hac vice admission applications
13  have been submitted to the Court.
14          THE COURT:  Okay.
15          MR. REILLY:  Thank you.  And Mr. Primis will address the
16  Court on behalf of Boeing.
17          THE COURT:  Thank you.
18          MR. REILLY:  Thank you, Your Honor.
19          MR. BERRY:  Good morning, Your Honor.  Ryan Berry from
20  DLA Piper on behalf of Argon and its directors, and I have with me
21  my partner, Dave Clarke, and Robin Williams from the D.C. office,
22  whose pro hac vice applications are pending.
23          THE COURT:  Okay.  Thank you.
24          MR. BERRY:  Thank you.
25          THE COURT:  Who's here for the plaintiff?
```

4

```
 1              MR. MARTORANA:  Good morning, Your Honor.  Francis
 2   Martorana from O'Donoghue & O'Donoghue, and I have with me
 3   Mr. Mark Reich and David Wissbroecker from Robbins Geller Rudman &
 4   Dowd, and Mr. Reich will address the Court.  He's been admitted
 5   pro hac vice.
 6              THE COURT:  He has been?
 7              MR. MARTORANA:  Yes.
 8              THE COURT:  Okay.  Thank you.
 9              Okay.  I'll hear argument on the motion for expedited
10   discovery.  I have read the papers submitted by -- in support of
11   the motion and in opposition to the motion by both the defendants,
12   so I don't need any long windup.  You can just get to the
13   argument, and speak from the podium in this court.  Thank you.
14              MR. REICH:  As Your Honor indicated that he read the
15   papers, I'll keep the argument brief.  This was a deal that was
16   announced in early July and a tender that must be completed and
17   shares must be tendered by August 4, and therefore, the rather
18   norm in these cases and particularly the tender offer is to seek
19   expedited discovery, and frankly, we spoke to defendants and asked
20   them to provide us with very basic information regarding the deal,
21   information that they claim they've provided to several companies,
22   up to 22 potential bidders, that we'd like to provide to
23   shareholders.  We'd like to vet that information, take a look at
24   it and make sure that it is the way they claim it was, which we
25   believe it was not.
```

5

1 What's before the Court right now is not damages.
2 What's before the Court right now is disclosures. It's
3 information that shareholders must have, it's imperative that they
4 have, it's material to the actual deal and whether or not they
5 should tender their shares.
6 THE COURT: What you have asked the Court for is not
7 what you just said. You've asked the Court to order the
8 defendants to provide every piece of paper they have about this
9 deal.
10 MR. REICH: That's not the -- that's not the case, Your
11 Honor. Respectfully, we -- in the normal course of these cases,
12 we very typically do have e-mails provided to us, we have internal
13 handwritten notes that were at board meetings, at special
14 committee meetings and the like.
15 We're not seeking that information here. We would like
16 the minutes. We'd like the presentation that was provided to the
17 board, the presentation that was provided to the special
18 committee, and information that was provided to, to potential
19 bidders.
20 Those are all information that's readily available to
21 defendants and could easily be provided. There's no
22 attorney-client privilege that's attached to it, there's no relief
23 for lengthy reviews. They can simply be Bates stamped and
24 provided to us without any burden to defendants whatsoever.
25 THE COURT: So one of the documents that you're asking

1  in this what you call limited discovery request are all documents
2  demonstrating business relationships between defendants,
3  defendants' advisors, and Boeing.
4          MR. REICH:  Yes.  That's an important part of this case
5  because of the way the information statement is written and
6  because of the relationship between Boeing, Argon, and their
7  financial advisors and the potential conflicts that's between
8  them.
9          What we know about the beginning of this process, Argon
10 was approached by an unnamed buyer, and they were asked to enter
11 into negotiations with them for a potential bid.  The response to
12 that buyer wasn't to enter into negotiation.  The response to that
13 buyer wasn't to hire a financial advisor on behalf of Argon.  The
14 response was picking up the phone and calling Boeing.
15         This, this seems to be or it's clearly a case where they
16 steering themselves or attempting themselves towards a specific
17 buyer.  Why would they go ahead and hire -- and contact Boeing?
18         So we need to know what that relationship was.  We need
19 to know the relationships between two companies, and we need to
20 know the relationship between Stone Key and Boeing and Stone Key
21 and Argon to assure that this was a fair process between them.
22         And even as the process moves forward, for whatever
23 reason, Boeing was given information before any other buyer, and
24 even when Stone Key came into play, Boeing still appeared to be
25 the preferred buyer, and there's no information whatsoever that

1  shareholders can decipher as to why that was, and that's why in
2  response to Your Honor's question that information is crucial for
3  us to review, and we need to have the documents relating to that
4  at perhaps a deposition to make sure that there's no improper
5  conflicts relating to that.
6          THE COURT:  Have you filed your TRO or motion for
7  preliminary injunction?
8          MR. REICH:  We have not, Your Honor.  Without
9  documentation and without further information, we don't have
10 sufficient information to go before the Court --
11         THE COURT:  So you want to -- generally, you have to
12 have information in order to file a lawsuit and ask for relief,
13 and what you're telling the Court is that you didn't have
14 sufficient information when you filed the lawsuit?
15         MR. REICH:  We had sufficient information to file the
16 lawsuit.  What I'm responding to is the question as to whether or
17 not we filed a preliminary injunction or a TRO, and the response
18 to that is that we have not, and the reason for that is for that
19 sort of relief, that heightened sort of relief, we certainly need
20 more information so that we can meet our burden of that sort of
21 motion.
22         THE COURT:  What about the irreparable harm argument
23 that the defendants make?  Let me hear your argument on that.
24         MR. REICH:  Okay.  The irreparable harm argument,
25 defendants is trying to deflect it into a damages issue.  This

8

1  is -- what's before the Court right now is not about damages.
2  It's about information that shareholders need to have before they
3  tender their shares, and the information we need to have, one of
4  which we've already touched upon, is the conflicts issue that
5  appeared to exist between Argon and Boeing, members of Argon and
6  Boeing, as well as their -- as well as their financial advisors.
7           As I said, at the beginning of this process, they were
8  approached by an unnamed buyer and then went ahead and called
9  Boeing.  At the end of the process, their last full day, one of
10 the bidders, Bidder B, went ahead and outbid Boeing.  Boeing was
11 given the opportunity to outbid them by 40 cents, which equates to
12 a mere 9 or 10 million dollars in a 7 or 800-million-dollar deal,
13 a minimal amount in comparison, and there's no indication in the
14 information statement that they went back to those other bidders
15 and said, "Hey, you just got outbid.  Do you want the ability to
16 counter-, counterbid that number?"  There's no information about
17 that.  If it did happen, the shareholders need to know about it.
18          In addition to that, there's also information regarding
19 projections or forecasts that the management prepared throughout
20 this process, 18 months of a process, and the shareholders don't
21 have that information at all.  Up until October 20 of 2009, there
22 was discussion about remaining an independent company.  After that
23 point, there is no discussion in the information statement about
24 it whatsoever.  There's no indication that they even considered it
25 at all.

1      If you're maximizing shareholder value and the
2 maximization of that shareholder value would be through an
3 independent company, those shareholders need to know what the
4 company's forecasts were, what the company's projections were
5 throughout the duration of that time.  Otherwise, there's no
6 explanation other than the fact that there was these improper
7 conflicts and there was a windfall for the CEO of the company, who
8 has the opportunity to divest 80 or 90 million dollars by selling
9 off his shares which he otherwise wouldn't have the opportunity to
10 do, and he gets to show up at his job the next day, still having
11 his job, but doesn't have the obligation to shareholders anymore.
12 So it's a win-win for him but a lose-lose for shareholders
13 entirely.
14      And that information, that's irreparable harm.  The
15 information relating to the conflicts, the information relating to
16 the process, and the information relating to the projections and
17 forecasts, that's the irreparable harm that we're in front of the
18 Court right now, and it's important for shareholders to get that
19 information through these documents, through expedited
20 depositions, so that we can have the opportunity to move this
21 Court to stop this deal if necessary prior to August 4.
22      THE COURT:  All right.
23      MR. REICH:  That's the response to the, to the question
24 that Your Honor asked in terms of irreparable harm.  If the Court
25 would like, I would like to talk a little bit about the, about the

10

1 process that went on here and haven't had the opportunity to start
2 from the beginning. As I said, in the beginning of the process,
3 they, they --
4     THE COURT: We're not -- you're not making your
5 argument. What I have to decide is whether I'm going to give you
6 relief, somewhat extraordinary relief to start discovery now, one,
7 that's one part of it, and then if I do, what type of discovery
8 and under what timetable that I would do, and I'm considering your
9 motion that you've presented to the Court and the discovery that
10 you have asked for under the timetable that you have asked for it.
11     So I, you know, I don't need to hear your timetable of
12 what everything happened in this whole, you know, scenario. We
13 have motions to dismiss that have been filed and are noticed for a
14 hearing. We don't have a preliminary injunction that has been
15 filed. This case has been pending for several weeks.
16     You know, I'm -- I'll hear what you have to say, but I
17 don't need to hear all of the factual allegations that you have
18 put into, I guess, what is now your second amended complaint.
19     MR. REICH: Fair enough, Your Honor. I want to the
20 respond to that. The second amended complaint -- well, the
21 amended complaint --
22     THE COURT: Corrected amended complaint, I guess, is
23 what, is what you call it.
24     MR. REICH: Sure. Let me, let me clarify. The initial
25 complaint was filed prior to the information statement coming out,

11

when it appeared to be an improper process and so on. When the information statement was filed, we amended our complaint to include allegations relating to the insufficient disclosures that were provided in the information statement, and that is precisely what we're in front of the Court about.

Defendants brought to our attention a paragraph or two that they viewed to be what they called offensive in terms of the process, and we agreed with defendants and were reasonable about it and changed two paragraphs to show that Boeing wasn't the only bidder but was the preferred bidder, and that's why we, we filed those, we filed those papers.

In terms of the timing of this, we asked defendants and also contacted this Court to have this actual hearing heard on an expedited basis and were denied that opportunity to do so. The fact that we're in this hurry-up right now is not because of anything plaintiff has done, is not because of anything the shareholders of the company has done, but it's because the company has decided that they needed to have this done as a tender offer and that the tender would expire on August 4, and that's why we're in this hurry-up right now in terms of having the disclosures provided to, provided to plaintiffs.

And the fact that we didn't file a preliminary injunction, it was premature before we have all the information to set before the Court and to set, to set forth the shareholders' basis for why this should be -- why this tender should be

1  enjoined.  That was the only reason that that happened.  We need
2  this information, and this is a common situation.
3         It's not extraordinary relief such as a preliminary
4  injunction.  This is simply to have expedited discovery, and this
5  is simply information that defendants have in their possession
6  already.  We're not asking them to go out and do searches.  We're
7  not asking them to go find, you know, to go searching through
8  things.  They have the information sitting on their desk, and they
9  simply can throw a Bates stamp on it and provide it to us in a PDF
10 or any other, or any other form whatsoever.
11        The reason why the process that I wanted to put before
12 the Court is important is to show what the issues are in the
13 information statement to show what information we'd like to get
14 into, to what information we'd like to investigate further that
15 the shareholders simply don't have.
16        And again, I've touched upon already the conflicts
17 issue.  I've touched upon the projections and the forecasts and
18 the like, but the process, going through the process, you know, is
19 very important because it shows the conflicts that exist between
20 individuals of the company, including the majority shareholder,
21 Mr. Sellier, who also in addition to Mr. Collins, the CEO that
22 I've already, that I've already mentioned would be getting a
23 windfall by selling his shares and continue to work for the
24 company, Mr Sellier also would have the opportunity to sell tens
25 of millions of dollars of shares that he would not have an

13

1 opportunity to do otherwise, and --
2        THE COURT: And what discovery do you need about that?
3 I mean, you've made that argument several times.
4        MR. REICH: I'm sorry, Your Honor?
5        THE COURT: What purpose does that have to go to you
6 wanting discovery in this case? You know all of that information.
7 You've put it in your papers.
8        MR. REICH: We don't have the information as to why
9 Mr. Collins and Mr. Sellier wanted to push this process towards
10 Boeing. They are voting 37.7 or somewhere in that range of those
11 shares in favor of it, and all Boeing needs is a majority of those
12 shares in order to then push the process along to have the
13 opportunity to buy up to 90 percent of the shares, and it's a
14 foregone conclusion that this is -- that they would have the
15 opportunity to do that if all they need is 13 percent.
16        So it's very important for shareholders to have, to have
17 the opportunity to vet the process that seems to have been,
18 appears to have been improper. Just because they had these 22
19 bidders, they were steering this process, it appears, all along to
20 go towards Boeing, and the shareholders need to know why.
21        And if defendants, if there's nothing wrong with this
22 process, the defendants have nothing to hide, they would have no
23 reason to be standing in front of this Court and spending the
24 Court's time and our time to have this, to have this motion
25 practice, and they would enter into expedited discovery, as is the

1  norm in many of these, in many of these cases, especially a case
2  that they have in the form of a tender offer that's going to close
3  on August 4.
4      In essence, this is about disclosures.  This is not
5  about -- what we're before the Court right now -- and we certainly
6  will be before the Court about the other issues, but what's before
7  the Court right now is the irreparable harm.  The irreparable harm
8  is disclosures.  The information statement is clearly insufficient
9  both on a process level and from the financial perspective.
10     There's just not enough information for shareholders to
11 make a determination as to whether or not to tender those shares,
12 and that's not something that can be remedied after the tender,
13 after the tender expired, and that's why we're asking for the very
14 simple relief -- and we're certainly willing to work with the
15 Court, to work with defendants to modify and tailor any requests
16 that we have in terms of discovery, but we certainly do need to
17 have expedited discovery both in terms of documents and in terms
18 of depositions to make sure that the process that took place and
19 the disclosures that were provided to the shareholders are
20 sufficient.
21     Thank you, Your Honor.
22     THE COURT:  Thank you.
23     I'm ready to rule.  I don't need to hear from the
24 defendants on this matter.  I've reviewed the papers that have
25 been submitted both by the moving party here and by both

15

1   defendants, and I do not find that the plaintiff has shown any
2   good cause for the relief that it has requested in this motion,
3   and I take the motion as filed; that is, I don't blue pencil and
4   ask to go back and revise things, so, you know, they put forward
5   what they thought they were entitled to and the reasons why they
6   thought they were entitled to it, and I find that there is not
7   good cause.
8           No temporary restraining order or preliminary injunction
9   has been filed in this case.  Yet the case has been pending for
10  motions to dismiss that have been filed by all the defendants, and
11  they're set for August 13, and they do raise substantial questions
12  as to the merits of the lawsuit to begin with.
13          I'm not quite sure what the plaintiff means by "limited
14  discovery" in its motion, but the discovery that it has set forth
15  in its motion is certainly not narrow or focused on whatever
16  issues that may have been relevant to a motion for a preliminary
17  injunction, which is yet to be filed, and, you know, I'm not sure
18  whether it ever will be filed.
19          Not every complaint that contains an allegation or a
20  reference to injunctive relief, either permanent or preliminary
21  injunctive relief, means that you get to do expedited discovery,
22  and I don't find that good cause has been shown here.  So for
23  those purposes, I'm denying -- on the other hand, the burden, I am
24  surprised that counsel could say that these documents are on their
25  desk and all they need to do is slap a Bates number on them,

16

1 because if you look at those discovery requests, it is much more
2 than that.  They are not as represented by counsel.
3      So under those circumstances, I'm denying the motion.
4 Thank you.
5      MR. REICH:  Thank you, Your Honor.
6      MR. BERRY:  Thank you, Your Honor.
7                (Which were all the proceedings
8                 had at this time.)
9
10           CERTIFICATE OF THE TRANSCRIBER
11   I certify that the foregoing is a correct transcript from the
12 official electronic sound recording of the proceedings in the
13 above-entitled matter.
14
15                         _____/s/_____
                                Anneliese J. Thomson
16
17
18
19
20
21
22
23
24
25