UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ANDREI SINIOUKOV, Individually and on Behalf of All Others Similarly Situated | ) ) ) | Civil Action No. 1:11-cv-00447-LO -TRJ |
| Plaintiff, | ) ) ) | **PLAINTIFF'S OMNIBUS RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'** |
| vs. | ) ) ) | **MOTIONS TO STAY AND FOR THIS COURT TO CONFER WITH THE DELAWARE CHANCERY COURT** |
| SRA INTERNATIONAL, INC., DR. ERNST VOLGENAU, JOHN W. BARTER, LARRY R. ELLIS, MILES R. GILBURNE, W. ROBERT GRAFTON, WILLIAM T. KEEVAN, MICHAEL R. KLEIN, DR. STANTON D. SLOANE, DR. GAIL R. WILENSKY, PROVIDENCE EQUITY PARTNERS LLC, STERLING PARENT INC., and STERLING MERGER INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**PAGE**

I.  MEMORANDUM OF LAW ..........................................................................................1

    A.    Introduction.........................................................................................................1

    B.    Abstention Would Be Improper Under *Colorado River*.........................................3

        1.    The Legal Standard for Abstention.............................................................3

        2.    The Delaware Proceedings Are Not Parallel to this Federal Action ...........6

        3.    Irrespective of this Court's Exclusive Federal Jurisdiction Over Plaintiff's Case, No Exceptional Circumstances Exist to Warrant Abstention .................................................................................................8

            a.    Convenience of Federal Forum.......................................................8

            b.    Desire to Avoid Piecemeal Litigation..............................................9

            c.    Order of Jurisdiction ......................................................................9

            d.    Adequacy of State Proceeding .......................................................10

            e.    Other Factors...............................................................................10

                (1)    Courts Outside of Delaware Reject the Notion that they Are Somehow Incapable of Adjudicating Issues Related to Delaware Corporate Jurisprudence........10

                (2)    The Dormant Commerce Clause Further Militates Against a Stay .................................................................11

                (3)    It Would Be Impractical and Risk Irreparable Harm to Plaintiff if this Court Were to Abstain...........................11

                (4)    Wise Judicial Administration Militates in Favor of Plaintiff Receiving at Least the Same Discovery that the Delaware Plaintiffs are Receiving to Avoid Prejudicing Plaintiff and the Class....................................13

            f.    The Tally.......................................................................................14

    C.    This Court Should Not Conduct *Ex Parte* Communications with the Delaware Chancery Court................................................................................15

II.  CONCLUSION........................................................................................................16

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

*Al-Abood ex rel. Al-Abood v. El-Shamari,*
    217 F.3d 225 (4th Cir. 2000) ..................................................5

*Brody v. Cox Commc'ns,*
    Civ. Action No. 2004CV89198 (Ga. Super. Ct. Sept. 27, 2004)...........................10

*Chase Brexton Health Servs., Inc. v. Md.,*
    411 F.3d 457 (4th Cir. 2005) ................................................4, 5

*Colorado River Water Cons. Dist. v. United States,*
    424 U.S. 800 (1976)................................................ *passim*

*Foster v. Abercrombie,*
    5:11-cv-00180-H, slip op. (E.D.N.C. May 11, 2011) ................................9

*Gannett Co., Inc. v. Clark Const. Group, Inc.,*
    286 F.3d 737 (4th Cir. 2002) ................................................5, 6, 9

*Golumbuski v. U.S. Oncology,*
    Cause No. 2004-14610 (Tex. Dist. Ct. May 10, 2004)...........................10

*Gordon v. Luksch,*
    887 F.2d 496 (4th Cir. 1989) ................................................5

*Great Am. Ins. Co. v. Gross,*
    468 F.3d 199 (4th Cir. 2006) ................................................ *passim*

*Hannien v. Pomeroy IT Solutions, Inc.,*
    No. 09-CI-01270 (Ky. Cty. Ct. July 27, 2009) ...........................10, 12, 13

*Harrison v. XTO Energy, Inc.,*
    705 F. Supp. 2d 572 (N.D. Tex. 2010) ................................................7

*In re Chambers Dev. Co. S'holders Litig.,*
    C.A. No. 12508, 1993 WL 179335 (Del.Ch. May 20, 1993) ...................9

*In re Comverse Tech., Inc. Derivative Litig.,*
    No. 06–CV–1849 (NGG)(RER), 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) ...............7

*In re Topps Co., Inc. S'holder Litig.,*
    No. 600715/07, 2007 WL 5018882 (N.Y. Sup. Ct. June 8, 2007)...........................10

*Kassel v. Consol. Freightways Corp. of Delaware,*
    450 U.S. 662 (1981)................................................11

*Kruse v. Snowshoe Co.*,
    715 F.2d 120 (4th Cir. 1983) ..........................................................................5

*Leonard v. Educators Mut. Life Ins. Co.*,
    No. 04-5310, 2005 U.S. Dist. LEXIS 7941 (E.D. Pa. May 5, 2005)...........................7

*Madema v. Medema Builders, Inc.*,
    854 F.2d 210 (7th Cir. 1988) ..........................................................................7

*Martin v. Ball*,
    326 Fed. Appx. 191 (4th Cir. 2009).................................................................5

*McLaughlin v. United Virginia Bank*,
    955 F.2d 930 (4th Cir. 1992) ..........................................................................5

*Minucci v. Agrama*,
    868 F.2d 1113 (9th Cir. 1989) ........................................................................7

*New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*,
    946 F.2d 1072 (4th Cir. 1991) ........................................................................5

*ODS Techs., L.P. v. Marshall*,
    832 A.2d 1254 (Del. Ch. 2003).......................................................................13

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ........................................................................12

*Richmond, Fredericksburg & Potomac R. Co. v. Forst*,
    4 F.3d 244 (4th Cir. 1993) .............................................................................5

*SST Global Tech., LLC v. Chapman*,
    270 F. Supp. 2d 444 (S.D.N.Y. 2003)..............................................................7

*Teamsters Local 456 Annuity Fund v. Republic Servs., Inc.*,
    Case No. 08-41909 (07) (Fla. 17th Jud. Cir. Oct. 22, 2008)....................................14

*TransDulles Center, Inc. v. USX Corp.*,
    976 F.2d 219 (4th Cir. 1992) ..........................................................................5

*TruServ Corp. v. Flegles, Inc.*,
    419 F.3d 584 (7th Cir. 2005) ..........................................................................6

*U.S. ex rel. Green v. Peters*,
    No. 93 C 7300, 1994 WL 113097 (N.D. Ill. Mar. 30, 1994) ................................15

*United States v. SCM Corp.*,
    615 F. Supp. 411 (D.Md. 1985) ......................................................................6

iii

*Whiteside v. Teltech Corp.*,
    940 F.2d 99 (4th Cir. 1991) ......................................................................................................5


## STATUTES, RULES AND REGULATIONS

15 U.S.C.A.
    § 78aa ........................................................................................................................................1

Exchange Act
    § 14(a)
    § 20(a) ........................................................................................................................................7

Federal Code of Judicial Conduct
    Canon 3(a)(4) ......................................................................................................................3, 15

Federal Rules of Civil Procedure
    Rule 38 ...........................................................................................................................1, 3, 7, 10


## SECONDARY AUTHORITIES

U.S. Constitution
    Seventh Amendment ....................................................................................................1, 3, 7, 10
    Article I, Section 8 ..................................................................................................................11

SEC Rule 14a-9 ...............................................................................................................................1

Plaintiff Andrei Sinioukov ("Plaintiff") respectfully submits the following omnibus response in opposition to Defendants' motions to stay, [Dkt. No. 19], and for this Court to confer with the Delaware Chancery court, [Dkt. No. 22].  In support therefore, Plaintiff states as follows:

## I.      MEMORANDUM OF LAW

### A.      Introduction

The Defendants are accused of using the channels of interstate commerce and the implements of the U.S. Securities and Exchange Commission ("SEC") to deprive the public shareholders of SRA International, Inc. ("SRA" or the "Company") of two fundamental rights.  The first is SRA shareholders' right to be fully informed about the process by which the Company's board of directors decided to sell the Company to Providence Equity Partners LLC ("Providence"), as well as certain financial metrics the financial advisor to the Company's board of directors, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), used in convincing the board that the takeover by Providence was fair from a financial point of view to Company shareholders.

In depriving Plaintiff and the class of this fundamental right, Defendants have violated §14(a) of the 1934 Act and SEC Rule 14a-9 ("Exchange Act") promulgated thereunder, which prohibits false and misleading statements of material facts in connection with proxy solicitations.  On April 18, 2011, Defendants filed a proxy solicitation with the SEC, telling SRA shareholders why they should vote in favor of the takeover by Providence.  The April 18, 2011 proxy solicitation is false and misleading given the material omissions contained therein, which Plaintiff sets forth in detail in his Complaint. [Dkt. No. 1, ¶¶48-49].  This Court has ***exclusive federal jurisdiction*** over this ***federal claim*** against Defendants under the Exchange Act.  *See* 15 U.S.C.A. § 78aa. Importantly, moreover, Plaintiff has demanded a jury trial pursuant to the Seventh Amendment to the U.S. Constitution and Rule 38 of the Federal Rules of Civil Procedure, something for which this Court also has exclusive federal jurisdiction.

1

The second fundamental right at stake concerns the process by which the Company's board of directors decided to enter into the takeover agreement by Providence.   Due to Defendant Volgenau's influence over the shopping process, as a controlling shareholder, founder and board chairman, the Company's value was not properly vetted as, among other things, bidders were spurned from making attempts to acquire SRA and the process was steered toward the business combination that best suited Defendant Volgenau.   Because the board acted, among other things, disloyally by favoring Providence over other bidders and by otherwise utterly failing to inform itself of the Company's true value, Defendants have violated the basic tenets of Delaware corporate law. This Court has ***supplemental jurisdiction*** over this ***pendant*** state law claim.

Enter Defendants' motions to stay and for this Court to confer with the Delaware Chancery Court.

Other purported SRA shareholders filed lawsuits in Delaware Chancery Court regarding the takeover by Providence.   In those actions, the plaintiffs allege violations of Delaware common law. Those plaintiffs do not assert any federal law claims, nor would the Delaware Chancery Court have any jurisdiction over any federal law claims.   Importantly, moreover, the Delaware litigants cannot seek a trial by jury since the Delaware Chancery Court prohibits trial by jury.   Nevertheless, Defendants have filed two motions arising out of the Delaware Chancery Court litigation, which ask for essentially the same thing.

Defendants ask this Court to stay this case to allow the Delaware Chancery Court litigation to proceed, and further ask this Court to consult with the Delaware Chancery Court in making that decision.   Defendants' logic is that the Delaware Chancery Court has "expertise" in the subject matter raised by these cases – expertise that Defendants claim is superior to any expertise this Court may have – and that, therefore, this Court should abstain from adjudicating the issues.   Defendants

also contend that this case and the Delaware litigation "are functionally identical" and that, for the purposes of judicial economy, this Court should abstain to allow the Delaware litigation to proceed because that litigation was purportedly filed first.

This Court should deny the motions. This Court has exclusive federal jurisdiction over the claims in this case. The Delaware Chancery Court litigation does not concern the Exchange Act claims. Nor does the Delaware litigation afford the right to a jury trial, something which this case, in stark contrast, affords to Plaintiff under the Seventh Amendment and Rule 38. The actions are, therefore, not parallel under the abstention doctrine of *Colorado River*. Additionally, even if this Court were to view the litigation as being parallel, the balance of the *Colorado River* factors heavily weigh in favor of this Court exercising jurisdiction, including considerations of federalism under the Dormant Commerce Clause, convenience, and irreparable harm to Plaintiff. Furthermore, it appears that Canon 3(a)(4) of the Federal Code of Judicial Conduct could prohibit this Court from conferring with the Delaware Chancery court. Perhaps more importantly, this Court does not need the permission or the advice of the Delaware Chancery Court in order to exercise jurisdiction over this case. This Court is perfectly competent to adjudicate the issues presented by this case. Thus, for the reasons more fully stated below, this Court should summarily reject Defendants' motions.

### B.    Abstention Would Be Improper Under *Colorado River*

### 1.    The Legal Standard for Abstention

Abstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813 (1976), as "federal courts are bound by a 'virtually unflagging obligation to exercise the jurisdiction given them,'" *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2006). Indeed, the Supreme Court has consistently cautioned that "federal courts have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Id*. at 206.

Of particular relevance here, "the rule is well recognized that the pendency of an action in the state system is **no bar** to proceedings concerning the same matter in the Federal court having jurisdiction." *Id*. at 205-06.[1]  Put differently, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Id*. at 205 Despite this sound structural feature of our federal system, and Fourth Circuit precedent, Defendants argue that this Court should abstain from exercising its jurisdiction over this action in favor of the Delaware litigation.  Defendants are wrong.

Indeed, "[q]uite apart from the important policies underlying traditional grounds for abstention, *Colorado River*, solely as a matter of judicial administration, permits dismissal of a *duplicative* federal action when wise judicial administration, giving due regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention."[2] *Chase Brexton Health Servs., Inc. v. Md*., 411 F.3d 457, 463 (4th Cir. 2005).  "Because *Colorado River* abstention does not rest on weightier concerns of proper constitutional adjudication and federal-state relations, the Supreme Court has admonished that it be applied parsimoniously." *Id*.

The Fourth Circuit has certainly taken to heart the Supreme Court's admonishment, holding consistently that *Colorado River* abstention is inappropriate across a broad range of circumstances.

---

[1]     Emphasis is added and internal citations are omitted unless otherwise noted.

[2]     The "traditional grounds for abstention," none of which is presented here, are (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law"; (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar"; and (3) "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films, or collection of state taxes." *Colorado River*, 424 U.S. at 814-16.

*See*, *e.g.*, *Great Am.*, 468 F.3d at 212 (reversing district court's exercise of *Colorado River* abstention); *Martin v. Ball*, 326 Fed. Appx. 191, 195 (4th Cir. 2009) (same); *Chase Brexton*, 411 F.3d at 467 (same); *Gannett Co., Inc. v. Clark Const. Group, Inc.*, 286 F.3d 737, 748 (4th Cir. 2002) (same); *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 253-54 (4th Cir. 1993) (same); *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 936 (4th Cir. 1992) (same); *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1074 (4th Cir. 1991) (same); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 103 (4th Cir. 1991) (same); *Gordon v. Luksch*, 887 F.2d 496, 498 (4th Cir. 1989) (same); *see also*, *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000) (affirming district court's refusal to exercise *Colorado River* abstention); *TransDulles Center, Inc. v. USX Corp.*, 976 F.2d 219, 224 (4th Cir. 1992) (same); *Kruse v. Snowshoe Co.*, 715 F.2d 120, 124 (4th Cir. 1983) (same).

The *Colorado River* case itself exemplifies the sort of exceptional circumstance that will warrant abstention from federal jurisdiction.  In *Colorado River*, the United States filed suit in federal district court seeking a declaration of its rights to water in certain rivers in Colorado.  The district court dismissed the action in favor of a then-pending Colorado state proceeding addressed to the very same water rights of the United States.  The Supreme Court held that dismissal was warranted by a number of factors counseling against a concurrent federal action, ***most significantly*** the fact that dismissal would further the clear policy expressed by Congress in the McCarran Amendment in favor of allowing each state to adjudicate the water rights of the United States. Congress's expressed preference for state court adjudication of federal water rights was an exceptional circumstance warranting abstention from federal jurisdiction.

"At bottom, in assessing whether *Colorado River* abstention is appropriate, a district court must remain mindful that this form of abstention is an extraordinary and narrow exception to the

5

duty of a District Court to adjudicate a controversy properly before it." *Great Am.*, 468 F.3d at 207.

Accordingly, this Court's task "is not to find some substantial reason for the exercise of federal

jurisdiction by the district court; rather, the task is to ascertain whether there exist *exceptional*

*circumstances*, the *clearest of justifications*, to justify the surrender of that jurisdiction." *Id*.

Ultimately, "[f]or a federal court to abstain under the *Colorado River* doctrine, two

conditions must be satisfied[:] there must be parallel proceedings in state and federal court [and]

'exceptional circumstances' warranting abstention must exist." *Gannett Co., Inc.*, 286 F.3d 737, 741

(4th Cir. 2002). Here, neither condition is satisfied; thus, abstention is inappropriate.

## 2.    The Delaware Proceedings Are Not Parallel to this Federal Action

"At the outset, a party invoking the *Colorado River* doctrine must demonstrate, beyond ***any***

***substantial doubt***, the existence of parallel state-court litigation that will be an adequate vehicle for

the complete and prompt resolution of the issues between the federal-court parties." *United States v.*

*SCM Corp.*, 615 F. Supp. 411, 417-18 (D.Md. 1985). "[I]f the two lawsuits are not parallel, the

*Colorado River* doctrine does not apply" and the inquiry ends. *TruServ Corp. v. Flegles, Inc.*,

419 F.3d 584, 591 (7th Cir. 2005).

"Suits are parallel if substantially the same parties litigate substantially the same issues in

different forums." *Gannett Co., Inc.*, 286 F.3d at 742. "The question is not whether the suits are

formally symmetrical, but whether there is a substantial likelihood that the state court litigation will

dispose of all claims presented in the federal case." *TruServ Corp.*, 419 F.3d at 592. "*Any* doubt

regarding the parallel nature of the state court suit should be resolved in favor of exercising

jurisdiction." *Id*.

Here, the issues in the Delaware litigation and Plaintiff's case are not sufficiently similar

such that they should be considered parallel lawsuits. Plaintiff alleges federal claims under §14(a)

6

and §20(a) of the Exchange Act, which the Delaware litigants do not and, for that matter, could not. These are exclusive federal claims that preclude abstention under *Colorado River*. Case law is clear that when a suit involves exclusive federal claims, it can never be parallel with a state court proceeding, and the "wise judicial administration" exception to jurisdiction cannot be invoked. *See*, *e.g.*, *Madema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir. 1988) ("wise judicial administration" exception does not apply when exclusive federal claims are involved); *Minucci v. Agrama*, 868 F.2d 1113, 1115 (9th Cir. 1989) (district court has no discretion to stay claims within exclusive jurisdiction of federal court); *Leonard v. Educators Mut. Life Ins. Co.*, No. 04-5310, 2005 U.S. Dist. LEXIS 7941, at *10-*12 (E.D. Pa. May 5, 2005) (suit containing exclusive federal claims can never be viewed as parallel with a state court proceeding).

This principle has been extended to cases where, like here, there is a shareholder suit proceeding in federal court with an exclusive federal claim. *Harrison v. XTO Energy, Inc.*, 705 F. Supp. 2d 572, 576–77 (N.D. Tex. 2010) (rejecting argument that similarity between Delaware-law breach of fiduciary duty claims and Exchange Act § 14(a) and 20(a) claims renders abstention appropriate); *In re Comverse Tech., Inc. Derivative Litig.*, No. 06–CV–1849 (NGG)(RER), 2006 WL 3193709, at *3 (E.D.N.Y. Nov. 2, 2006) ("given the exclusive jurisdiction of the federal courts over Exchange Act claims, courts confronted with *Colorado River* abstention requests in cases involving such claims have routinely denied those requests"); *SST Global Tech., LLC v. Chapma*n, 270 F. Supp. 2d 444, 463–64 (S.D.N.Y. 2003) (rejecting argument that abstention was appropriate because a pending Delaware action would resolve the factual issues underlying federal Exchange Act claims).

Additionally, unlike in the Delaware Chancery court litigation, Plaintiff here has demanded a jury trial under the Seventh Amendment to the U.S. Constitution and Rule 38. Plaintiff's case,

unlike the Delaware Chancery court litigation, implicates the federal constitutional right to a jury trial in civil cases.   Therefore, the because of this Court's exclusive federal jurisdiction over Plaintiff's claims, abstention would be improper under *Colorado River*.

> **3.**    **Irrespective of this Court's Exclusive Federal Jurisdiction Over Plaintiff's Case, No Exceptional Circumstances Exist to Warrant Abstention**

Even assuming, *arguendo,* that the Delaware litigation would be considered parallel to Plaintiff's case, no exceptional circumstances exist to warrant the exercise of *Colorado River* abstention.

"If parallel suits exist, then [the court] must carefully balance several factors with the balance *heavily weighted* in favor of the exercise of jurisdiction."  *Great Am.*, 468 F.3d at 207.  "Although the decision to dismiss a federal suit because of parallel state-court litigation does not rest on a checklist, six factors have been identified to guide [the court's] analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of the others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights."  *Id.*

None of these factors favors abstention and will each be addressed in turn.

> **a.**    **Convenience of Federal Forum**

This factor favors Plaintiff.  SRA's corporate headquarters are located at 4300 Fair Lakes Court Fairfax, VA 22033.  This is where the corporate documents pertinent to this action are located. Furthermore, many of SRA's board of directors reside in the DC area.   On the other hand, the Delaware forum is over 130 miles away from SRA's corporate headquarters, and just beyond

reasonable, roundtrip traveling distance for witnesses to attend routine, evidentiary and other matters.   It is obviously more convenient to litigate this case here in Virginia than in Delaware.

### b.    Desire to Avoid Piecemeal Litigation

Litigation involving some similar issues is inherently piecemeal and, to some extent, inefficient; but it is not deemed unacceptable in our federal-state system.   Rather, to abstain from federal jurisdiction in favor of a related state lawsuit, the Court must find a "possibility of inefficiencies and inconsistent results *beyond* those inherent in parallel litigation, or the litigation must be *particularly* ill-suited for resolution in duplicate forums."   *Gannett Co.*, 286 F.3d at 744. This possibility does not exist because Plaintiff is asserting an exclusive federal question that only this Court can adjudicate and decide.   For instance, Judge Howard of the Eastern District of North Carolina recently adjudicated the motion for a preliminary injunction before him that raised exclusive federal claims under the Exchange Act arising out of a corporate takeover, despite the defendants' contention that issues would be settled in a purportedly parallel litigation in Delaware Chancery Court.   *Foster v. Abercrombie*, 5:11-cv-00180-H, slip op. (E.D.N.C. May 11, 2011), attached hereto as **Exhibit** "**A**."

### c.    Order of Jurisdiction

Defendants contend that the Delaware plaintiffs have the "first filed" action.   However, the complaint in the Delaware action and Plaintiff's complaint could be considered contemporaneous, despite the 18 day difference. *In re Chambers Dev. Co. S'holders Litig*., C.A. No. 12508, 1993 WL 179335, at *7 (Del.Ch. May 20, 1993) (indicating that a Delaware action filed nearly two weeks after a foreign-filed action was "in the same general time period as the present action [so as] to be considered contemporaneous"). Furthermore,  Defendants neglect to note the fact that Plaintiff filed the first lawsuit that challenged the impropriety of the April 18, 2011 proxy solicitation by the Defendants.   Plaintiff filed this action on April 25, 2011 challenging the proxy solicitation.   In

contrast, the Delaware litigants first challenged the proxy solicitation through an amended complaint filed on April 29, 2011. Moreover, Plaintiff sought expedited discovery before the Delaware litigants. Thus, this Court considers any case to be "first," it should consider Plaintiff's case to be the first-filed action as to the actual issue presented in this litigation. To be sure, Defendants concede that both this case and the Delaware litigation concern the proxy solicitation.

### d.    Adequacy of State Proceeding

This factor strongly favors Plaintiff. Again, as stated above, this Court is the only tribunal authorized to adjudicate Plaintiff's Exchange Act claims. The Delaware Chancery Court cannot, as a matter of law, touch upon these exclusive federal claims for which only this Court has jurisdiction. Nor does the Delaware Chancery Court permit jury trials. In contrast, Plaintiff has filed a jury demand pursuant to the Seventh Amendment to the U.S. Constitution and Rule 38. Thus, abstention would violate Rule 38 and the Seventh Amendment by depriving Plaintiff of, among other things, a fundamental constitution right to a trial by jury.

### e.    Other Factors

#### (1)    Courts Outside of Delaware Reject the Notion that they Are Somehow Incapable of Adjudicating Issues Related to Delaware Corporate Jurisprudence

As stated above, Defendants suggest that the Delaware Chancery Court has better expertise than this Court to handle the issues presented in this case. Other courts have rejected similar suggestions and motions to stay on this ground. *See*, *e.g.*, *In re Topps Co., Inc. S'holder Litig.*, No. 600715/07, 2007 WL 5018882, at *2 (N.Y. Sup. Ct. June 8, 2007); *Golumbuski v. U.S. Oncology*, Cause No. 2004-14610 (Tex. Dist. Ct. May 10, 2004); *Brody v. Cox Commc'ns*, Civ. Action No. 2004CV89198 (Ga. Super. Ct. Sept. 27, 2004); *Hannien v. Pomeroy IT Solutions, Inc.*,

No. 09-CI-01270 (Ky. Cty. Ct. July 27, 2009).[3]  This Court should follow this precedent by rejecting

the notion that it is not equipped to adjudicate the issues presented in this case.

**(2)      The Dormant Commerce Clause Further<br>Militates Against a Stay**

This Court should scrutinize the strictures of the Dormant Commerce Clause and its interplay

with Defendants' motions.  Plaintiff respectfully submits that the notion that this Article III federal

court presiding over exclusive federal question claims and supplemental state law claims is somehow

beholden to litigation in the state of Delaware is repugnant to Article I, Section 8 of U.S.

Constitution.  This Court and Plaintiff's access to redress federal and supplemental state law claims

in this Court should not somehow be dependent upon ***non-jury*** litigation taking place in a state court

proceeding in the state of Delaware.  For just as it violates the dormant commerce clause to make

national trucking routes beholden to restrictions in the state of Iowa, *see Kassel v. Consol.*

*Freightways Corp. of Delaware*, 450 U.S. 662 (1981), so too would it violate that constitutional

prohibition if courts around this country, including this Article III Court, were to supplant their full

and fair evaluation of live controversies for the mere whims of Delaware litigants.  Just because

many companies are incorporated in the state of Delaware to take advantage of perceived benefits to

directors under its corporate law, it does not then entitle these companies and their officers to dictate

how (***including, whether or not by a jury***), when, where and with whom they litigate after they have

been accused of significant wrongdoing and improprieties, including the violation of federal law.

**(3)      It Would Be Impractical and Risk Irreparable<br>Harm to Plaintiff if this Court Were to Abstain**

Defendants' contention that there could be duplicative and potentially conflicting rulings

---

[3]      The orders denying the motions to stay are collectively attached hereto as **Composite
Exhibit "B."**

11

between this Court and the Delaware court rings hollow.  No such threat exists.  In fact, just the opposite should be feared – a "reverse auction" in Delaware[4] or a scenario where the Delaware plaintiffs dismiss their lawsuit, thus severally prejudicing Plaintiff.

The Order in the *Pomeroy* litigation is particularly instructive in this regard.  *Pomeroy*, No. 09-CI-01270, at *1 (contained within **Composite Exhibit B**).  There, defendants moved a Kentucky court to stay the shareholder litigation that was pending before it in favor of a parallel litigation that was pending in Delaware.  *Id.*  The Defendants asked the Kentucky court to stay the action "as a matter of comity, to avoid the possibility of inconsistent or conflicting results, to avoid duplication and waste of judicial time and resources, and to avoid the diminution of shareholder value." *Id.*  The Kentucky court refused to stay the action that was pending before it, as it believed "there [was] a risk to the [p]laintiff if the matter [were] stayed."  *Id.*

Plaintiff here, just like the plaintiff in the *Pomeroy* litigation, seeks expedited discovery in advance of an impending business combination and faces the same risk of prejudice by being denied expedited discovery.  First, and as stated throughout Plaintiff's papers, expedited discovery is quintessential to addressing material omissions to shareholders in impending business combinations

---

[4]      Judge Posner has famously articulated the concept of a reverse auction in *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002), describing it as:

> [T]he practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.  The ineffectual lawyers are happy to sell out a class they anyway can do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line-the sum of the settlement and the attorneys' fees-and not the allocation of money between the two categories of expense.

*Id.* at 282.

because *post hoc* damage remedies are disfavored since it is exceedingly arduous for the Court to "unscramble the eggs," as it were, and settle the equities after an unlawful merger has closed.  *See ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1263 (Del. Ch. 2003).  Moreover, contrary to what Defendants contend, there is no guarantee – much less any suggestion – that the putative litigants in Delaware will be able to protect the interests of SRA's shareholders.

Thus, staying this action will risk prejudicing Plaintiff like the court in *Pomeroy* feared.  Indeed, in retrospect, the *Pomeroy* court's decision proved to be the prudent one as the *Pomeroy* court's fear of prejudice to the plaintiff would otherwise have come to fruition: ***shortly after the Pomeroy defendants moved the Kentucky court to stay the action, the Delaware litigant dismissed its case***.  *See* Dockets from Pomeroy Litigation, attached hereto as **Exhibit "C."**  Had the Kentucky court granted that stay, the Kentucky plaintiff would have been weeks behind in the process of collecting and analyzing discovery.

Similarly, here, the pending Delaware litigation guarantees Plaintiff absolutely no certainty that their interests will be adequately protected, and if this Court were to stay this case, and the proceedings in Delaware were not to adequately progress, Plaintiff's hands could be effectively tied in protecting the interests of the putative class he seeks to represent by not having enough time to obtain, analyze, and use discovery before the close of the takeover.

> **(4)     Wise Judicial Administration Militates in Favor of Plaintiff Receiving at Least the Same Discovery that the Delaware Plaintiffs are Receiving to Avoid Prejudicing Plaintiff and the Class**

What makes the most sense is for this Court to deny Defendants' motions to stay or, more

particularly, to do what Judge Robert Rosenberg[5] did in a corporate merger case that took place in

Fort Lauderdale, Florida against Republic Services, Inc.  In *Teamsters Local 456 Annuity Fund v.*

*Republic Serv*s*., Inc.*, Case No. 08-41909 (07) (Fla. 17th Jud. Cir. Oct. 22, 2008),[6] the plaintiff

moved for expedited discovery and, like this Court, Judge Rosenberg was also faced with a motion

to stay based upon an allegedly parallel Delaware case.   Republic Services, like SRA, was a

Delaware corporation, however, it maintained its headquarters within minutes of the Broward

County Courthouse, just like SRA maintains its office in Virginia not far from this Court.  Therefore,

Judge Rosenberg did not grant the motion to stay but instead ordered that the plaintiff in the Florida

litigation be granted the same discovery that the Delaware plaintiff was receiving.  *See* **Composite**

**Exhibit "D."**  In fact, since, as a thinly-veiled attempt to demonstrate that the Delaware proceedings

are somehow more procedurally advanced, Defendants ***agreed to expedited discovery in Delaware***,

this Court should order that Plaintiff in this action receive at least the same discovery as Defendants

agreed to provide to the Delaware plaintiffs.  Defendants suffer no prejudice by this request.

### f.    The Tally

"In tallying the relevant factors and considering them against the lager policies underlying

*Colorado River*," it is apparent that this case does not present the kind of exceptional circumstance

warranting a surrender of federal jurisdiction.  *Great Amer.*, 468 F.3d at 209.

Accordingly, Defendants' motion to stay this case should be denied.

---

[5]    As an aside, Judge Rosenberg is sometimes known for his involvement in counting ballots in the 2000 presidential election.  In fact, the Smithsonian's National Museum of American History maintains, on its website, the infamous picture of Judge Rosenberg counting ballots with a magnifying glass.  *See* http://americanhistory.si.edu/VOTE/florida.html (last visited May 13, 2011).

[6]    *See* Orders, attached hereto as **Composite Exhibit "D."**

**C.      This Court Should Not Conduct *Ex Parte* Communications with the Delaware Chancery Court**

Canon 3(a)(4) of the Federal Code of Judicial Conduct proscribes certain *ex parte* communications by federal judges.  The Commentary to Cannon 3(a)(4) states, in pertinent part:

> The restriction on ex parte communications concerning a proceeding includes communications from lawyers, law teachers, and ***others who are not participants in the proceeding.  A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities.*** A judge should make reasonable efforts to ensure that law clerks and other court personnel comply with this provision.

This concept of the "other judges" with whom federal judges may consult consistent with Canon 3(a)(4) of the Federal Code of Judicial Conduct "is ordinarily understood to extend only to a judge's election to consult ***with his or her own colleagues***."  *U.S. ex rel. Green v. Peters*, No. 93 C 7300, 1994 WL 113097, at *2 (N.D. Ill. Mar. 30, 1994).  Plaintiff respectfully submits that it appears Vice Chancellor Noble is not a "colleague" of this Court.  Thus, it also appears that this Court's communication with Vice Chancellor Noble could fall within the phrase "others who are not participants in the proceeding" and could be prohibited by Canon 3(a)(4) of the Federal Code of Judicial Conduct.

Defendants have not submitted authority to the contrary. Indeed, in Defendants' request for this Court to confer with the Delaware Chancery Court, Defendants have not addressed Cannon 3(a)(4) or otherwise reconciled how such a conference would implicate Canon 3(a)(4).

Furthermore, Plaintiff also respectfully submits that Canon 3(a)(4) of the Federal Code of Judicial Conduct should be interpreted to prohibit Defendants' request for a conference with the Delaware Chancery Court for many of the same reasons that abstention would be inappropriate under *Colorado River*.  First, this Court has exclusive federal jurisdiction over this case and the Delaware Chancery Court litigation does not concern the Exchange Act claim.  Nor does the Delaware litigation afford the right to a jury trial, which this case, in stark contrast, does.

15

Additionally, the balance of the *Colorado River* factors heavily weigh in favor of this Court exercising jurisdiction. Thus, this Court's power as an Article III court sitting over exclusive federal claims would be eviscerated if Cannon 3(a)(4) were to be interpreted to allow Defendants' request. This Court does not need the permission or the advice of the Delaware Chancery Court in order to exercise jurisdiction over this case. Nor does the Dormant Commerce Clause permit the Delaware Chancery Court to influence this Court in that respect.

## II.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully asks this Court to summarily deny Defendants' pending motions to stay and for this Court to confer with the Delaware Chancery court. This Court should instead grant Plaintiff's request for expedited discovery and proceedings.

Respectfully submitted,


/s/
Steven B. Gould (Va. Bar No. 45410)
sgould@brownandgould.com
Jesse D. Stein (Va. Bar No. 74221)
jstein@brownandgould.com
BROWN & GOULD, LLP
7700 Old Georgetown Rd.
Suite 500
Bethesda, MD 20814
Telephone:  301-718-4548
301-718-8037 (fax)

Stuart A. Davidson
Cullin A. O'Brien
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Randall J. Baron
A.  Rick Atwood, Jr.
David T. Wissbroecker
ROBBINS GELLER RUDMAN & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Frank A. Bottini
JOHNSON BOTTINI, LLP
501 W. Broadway, Suite 1720
San Diego, CA  92101
(619) 230-0063
(619) 238-0622 (fax)

Attorneys for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing paper was served on counsel of record via this Court's CM-ECF system on May 16, 2011, as well as via email on the following:

Maeve O'Connor
Mocconor@devevoise.com
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York  20022
Counsel for Defendants Providence Equity Partners LLC,
Sterling Parent Inc., and Sterling Merger Inc.

John C. Millian
jmillian@gibsondunn.com
Gibson Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Counsel for Defendant Dr. Ernst Volgenau

_____/s/_____

Steven B. Gould