# Exhibit 05

EFiled: May 19 2011 5:57PM EDT
Transaction ID 37694706
Case No. Multi-case



IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

-------------------------------------- x

BEATRIZ LLORENS, individually and on :
behalf of all others similarly situated,

                  Plaintiff, :

     v.                  :     C.A. No. 6350-VCS

RURAL/METRO CORPORATION, :
MICHAEL P. DiMINO, CHRISTOPHER S.
SHACKELTON, CONRAD A. CONRAD, :
EUGENE I. DAVIS, EARL P. HOLLAND,
HENRY G. WALKER, ROBERT E. :
WILSON, WP ROCKET HOLDINGS LLC,
WP ROCKET MERGER SUB, INC., and :
WARBURG PINCUS, LLC,

                  Defendants. :

-------------------------------------- x

JOANNA JERVIS, individually and on behalf :
of all others similarly situated,

                  Plaintiff, :

     v.                  :     C.A. No. 6489-___

CHRISTOPHER S. SHACKELTON, :
MICHAEL P. DiMINO, EUGENE I. DAVIS,
EARL P. HOLLAND, CONRAD A. :
CONRAD, HENRY G. WALKER, ROBERT
E. WILSON, WP ROCKET HOLDINGS LLC, :
WP ROCKET MERGER SUB, INC., and
WARBURG PINCUS, LLC, :

                  Defendants. :

-------------------------------------- x

## PLAINTIFF JOANNA JERVIS' MOTION TO CONSOLIDATE
## AND APPOINT LEAD AND LIAISON COUNSEL

{BMF-W0251609.}

Plaintiff Joanna Jervis hereby moves for entry of an Order consolidating her above-captioned case, C.A. No. 6489, into the matter styled *Llorens v. Rural/Metro Corporation, et al.*, C.A. No. 6350-VCS, and appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel and Bouchard Margules & Friedlander, P.A. ("BMF") as Delaware liaison counsel in the consolidated matter.  The grounds for the motion are as follows:

## INTRODUCTION

Plaintiff Joanna Jervis, who initially filed an action in Arizona regarding the pending acquisition of Rural/Metro Corporation (the "Proposed Acquisition"), filed this lawsuit in Delaware on May 16, 2011 after learning that defendants had agreed to provide discovery in the related *Llorens* matter, and a scheduling order had been entered by the Court.  Plaintiff Jervis' decision was also informed by defendants' filing of a Motion to Stay, which essentially asked the Arizona court to stay plaintiff Jervis' action pending in Arizona. Before filing this action, plaintiff Jervis' counsel, Robbins Geller, discussed a potential leadership structure with counsel in the *Llorens* matter, Faruqi & Faruqi LLP ("Faruqi"), which would have designated Robbins Geller as sole Lead Counsel and BMF as Delaware Liaison Counsel, with Faruqi serving as an executive committee.  Faruqi rejected the proposal, necessitating this motion.

Robbins Geller and BMF are the law firms best qualified to represent the interests of shareholders in the Delaware action.  Robbins Geller and BMF have worked together in a number of actions, earning the commendation of the Court on multiple occasions.  In *In re Chaparral Resources, Inc.*, C.A. No. 2633-VCL, tr. (Del. Ch. Mar. 13, 2008) (Exhibit A

hereto), for example, Vice Chancellor Lamb complimented the efforts of Robbins Geller and BMF in the context of approving a post-trial settlement in which stockholders received $41million, 45% more than the merger price negotiated by a special committee two years earlier:

> I believe that the plaintiffs' counsel and the plaintiffs did excellent work in this case,
> and that the result achieved through the trial and, eventually, through the settlement is an excellent result. . . . The questions of liability -- because of the work that you and your firm and your co[-]counsel had done, liability questions were quite clear. The difficult issues were valuation . . . . And I think the result of the mediation is outstanding for the class.
>
> <div align="center">* * *</div>
>
> [T]he case was diligently litigated by expert counsel. It was litigated hard. It was brought to trial in a short time period. It involved substantial efforts, traveling around the world for depositions and dealing with difficult issues of translating documents, or getting translations from Russian to English, and then dealing with very complex valuation issues. The counsel who prosecuted the case are obviously well-known to the members of this Court and of very high standing. While I'm not sure I have ever before awarded a third of the total recovery to anyone, I am prepared to do it in this case because I think the performance was outstanding, and frankly, without the efforts of counsel, nothing would have been achieved. The class would have gotten zero. I don't think that can be more clear.

*Id.* at 8, 17; *see also id.* at 3-4. Vice Chancellor Lamb also observed that "your predecessor counsel tried to . . . settle the case on the basis of the low-hanging fruit, as I remember." *Id.* at 5.

Similarly, in *In re Prime Hospitality, Inc. S'holders Litig.*, C.A. No. 652-CC, tr. (Del. Ch. Sept. 19, 2007) (Exhibit B hereto), Chancellor Chandler lauded the efforts of Robbins Geller and BMF in the context of approving settlement of $25 million, which followed a successful objection by Robbins Geller and BMF to a disclosure settlement proposed by prior lead counsel:

[I]t's not typical for the Court to reject a proposed settlement. I would characterize it as a rare event. And so, I start from the premise that this was a significant achievement by counsel on behalf of the proposed class at the outset to convince the Court that this settlement should not be approved, and gave new counsel a chance to find out if there was more value to be obtained. So that in itself to me is a significant achievement. It led, I think, ineluctably then to the benefit. So there is no doubt as to the causal connection, because had it not been for the intervention of new counsel and the rejection of the initial settlement, and then the exploration through discovery, of what the claims were, there would not have been a settlement that would have generated actual cash for the shareholders. So there was a clear effort that was beneficial to the class. It was the causal factor for the benefit achieved, and it was not an insignificant benefit given that the deal had already closed, and given what I think were significant problems that would have been encountered if there had been an effort to pursue a *Revlon* claim to a full trial. That's quite an achievement on which I compliment Mr. Bouchard, Mr. Baron.

*Id.* at 42-43.

Robbins Geller and BMF also worked as co-lead counsel in *Joseph v. Heisley*, C.A. No. 20188 (Del. Ch.), which was resolved following a five-day trial before this Court on terms whereby public stockholders of WorldPort Communications, Inc. were bought out at 38% above the market price for their shares. Robbins Geller and BMF also successfully objected to a proposed class action settlement in *In re PeopleSoft, Inc. S'holders Litig.*, C.A. No. 20365 (Del. Ch.), which involved PeopleSoft Inc.'s defenses to a pending takeover effort by Oracle Corporation.

In addition to those cases co-litigated with BMF, Robbins Geller attorneys have taken merger- related cases to the brink of trial and recovered over half a billion dollars. For example, in *In re TD Banknorth S'holders Litig.*, C.A. No. 2557-VCL (Del. Ch.), Robbins Geller secured a $50 million settlement for TD Banknorth's minority shareholders just months before trial, after two and a half years of litigation. Robbins Geller took over the

4

case after successfully objecting to a proposed settlement of less than $3 million. In *In re ACS S'holder Litig.*, C.A. No. 4940-VCP (Del. Ch.), Robbins Geller, along with other Delaware counsel, obtained unprecedented structural modifications, and ultimately, a settlement of $69 million just days before trial.

Indeed, based in large part on Robbins Gellers' "significant success in Delaware," Vice Chancellor Laster recently appointed Robbins Geller to serve as co-lead counsel in *In re Del Monte Foods Co. S'holder Litig.*, C.A. No. 6027-VCL, 2010 Del. Ch. LEXIS 255, at *30-*33 (Dec. 31, 2010). The result of Robbins Geller's effective prosecution in the *Del Monte* litigation was an unprecedented injunction, enjoining not just the close of a $4 billion merger transaction but also wiping out various deal protection devices including a $120 million termination fee and a "no-solicitation" clause. *See In re Del Monte Foods Co. S'holders Litig.*, C.A. No. 6027-VCL, 2011 WL 532014 (Del. Ch. Feb. 14, 2011).

Robbins Geller has also demonstrated significant success outside of Delaware. In *In re eMachines, Inc. Acquisition Litig.*, No. 01-CC-00156 (Cal. Super. Ct., Orange County), Robbins Geller pursued the case over a four-year period, to the brink of trial, and created a common fund settlement of $24 million. In *In re Dollar General Corp. S'holders Litig.*, No. 07MD-1 (Davidson County 6th Cir. Ct., Tenn.), after nearly two years of litigation, Robbins Geller obtained a common fund settlement of $40 million. In *In re PETCO Animal Supplies, Inc. S'holder Litig.*, No. GIC-869399 (Cal. Super. Ct., San Diego County), Robbins Geller pursued relief for over two years to the brink of trial, and obtained a settlement of $16 million. And just weeks ago, Robbins Geller achieved, in the face of formidable risk

and opposition, a settlement of $200 million in *In re Kinder Morgan, Inc. S'holders Litig.*, No. 06-C-801 (Shawnee County Dist. Ct., Kan.).[1]

BMF has also obtained significant relief for stockholders in cases not co-litigated with Robbins Geller, including a $47.5 million settlement shortly before trial in *In re TeleCorp PCS, Inc.*, Cons. C.A. 19260, tr. (Del. Ch., Aug. 20, 2003) (Exhibit D hereto), which this Court described as "a very, very, high-quality result." *Id.* at 93. This Court also observed: "There was really the opportunity to take a path more traveled early in this case, I sensed, and – which was to have to sort of gin up some expedited proceedings and see if everyone could get happy; and that route wasn't taken and a riskier route [was] traveled." *Id.* In *In re Dairy Mart Convenience Stores, Inc. Deriv. Litig.*, C.A. No. 14713, Chandler, C., tr. at 23-24 (Del. Ch. Dec. 13, 1999) (Exhibit E hereto), Chancellor Chandler described BMF's work in obtaining a post-trial settlement that effected a change of control from insiders to public stockholders as "truly an amazing performance . . . these fees are not only deserved; they were earned." Earlier this year, Vice Chancellor Laster and Vice Chancellor Noble both lauded the work of BMF. *Kurz v. Holbrook*, C.A. No. 5019-VCL, tr. at 104 (Del. Ch. July 19, 2010) ("[BMF] is well known to the Court. It's small, it's efficient, it's experienced, but I think those are the attributes that allowed them to pull this off. I think to do a case like this,

---

[1] *See also In re Cameron Ashley Sec. Transaction*, No. 00-0971-A (Dallas County Ct., Tex.) ($33 million benefit); *Feldman v. Walden Residential Props. Inc.*, No. CC-99-11645-07 (Dallas County Ct., Tex.) (forced the repurchase for cash of over $100 million of preferred stock); *In re Dole S'holders Litig.*, No. BC281949 (Cal. Super. Ct., Los Angeles County) (negotiated a $172 million increase in the merger consideration paid to Dole shareholders). The firm resume of Robbins Geller is attached hereto as Exhibit C.

you were best-served by having a small trial team with experienced people that know the law and are willing to do the work.") (Exhibit F hereto); *San Antonio Fire & Police Pension Fund v. Bradbury*, C.A. No. 4446-VCN, mem. op. at 35 (Del. Ch. Oct. 28, 2010) ("This was a complex engagement. The quality of the work was excellent. The standing and ability of Plaintiff's Counsel cannot be questioned.").

Between them, Robbins Geller and BMF have been lead counsel in ten of the largest post-merger class action common funds of which we are aware during the past decade:



*Robbins Geller and/or BMF served as a lead counsel.

## ARGUMENT

### A.   Consolidation of this Action is Appropriate

Court of Chancery Rule 42 authorizes the consolidation of separately commenced actions in defined circumstances:

> [W]hen actions involving a common question of law or fact are pending
> before the court, it may order a joint hearing or trial of any or all the matters
> in issue in the actions; it may order all the actions consolidated; and it may
> make such orders concerning proceedings therein as may tend to avoid
> unnecessary costs or delay.

Ch. Ct. R. 42(a).  Because this action and the *Llorens* matter involve common questions of

law or fact concerning defendants' alleged breaches of fiduciary duty and aiding and abetting

breach of fiduciary duty in connection with Proposed Acquisition, plaintiff Jervis

respectfully requests that her action be consolidated with the *Llorens* action under the

consolidated caption *In re Rural Metro Corporation Shareholders Litigation*, No. 6350-

VCS.

**B.      This Court Should Appoint Robbins Geller as Lead Counsel and
BMF as Delaware Liaison Counsel**

**1.      The Applicable Standards**

In cases resolving lead counsel disputes, the Court's "decisions have stressed the

importance of factors that will lead to meaningful representation." *In re Revlon, Inc.

S'holders Litig.*, 990 A.2d 940, 955 (Del. Ch. 2010).  The general framework for the Court's

analysis was set forth by Vice Chancellor Lamb in *Hirt v. Timberlands Service Co. LLC*,

C.A. No. 19575, 2002 Del. Ch. LEXIS 89, 2002 WL 1558342 (Del. Ch. July 3, 2002), as:

> (i) the quality of the pleading that appears best able to represent the interests
> of the shareholder class and derivative plaintiffs;
>
> (ii) the relative economic stakes of the competing litigants in the outcome of
> the lawsuit (to be accorded great weight);
>
> (iii) the willingness and ability of all the contestants to litigate vigorously on
> behalf of an entire class of shareholders;
>
> (iv) the absence of any conflict between larger, often institutional,
> stockholders, and smaller stockholders;

(v) the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; and

(vi) the competence of counsel and their access to the resources necessary to prosecute the claims at issue.

*See Id.* at *2.

In *Del Monte*, Vice Chancellor Laster distilled the *Hirt* factors down to two focal points for determining which counsel should be appointed to lead the litigation for shareholders: (i) counsel's performance in the litigation to date, which encompassed "the enthusiasm and vigor with which the various contestants have prosecuted the litgation" and "the quality of pleading that counsel has prepared"; and (ii) counsel's track record and ability to litigate going forward. *Del Monte*, 2010 Del. Ch. LEXIS 255, at *24-*34. Application of these two factors demonstrates that Robbins Geller should be appointed Lead Counsel, and BMF should be appointed Liaison Counsel.

### 2.    Counsel's Performance in the Litigation to Date

#### a.    The Enthusiasm and Vigor With Which Counsel Has Prosecuted the Litigation

The litigation in Arizona generally proceed on the same track with the *Llorens* matter, which counsel in each action recognizing "that the filing of the Preliminary Proxy would kick off the real litigation activity." *Id.* at *24. Robbins Geller chose "not to file a precipitous motion to expedite," reflecting a mature understanding or how the litigation would unfold." *Id.* Instead, Robbins Geller served discovery, and began preparing an amended pleading after the Preliminary Proxy was filed. Once Robbins Geller was informed that a schedule had been agreed to in this action, Robbins Geller determined that the best course of action would be to agree to dismiss the Arizona action and refile in this Court.

Before doing so, Robbins Geller secured defendants' agreement to produce the same discovery to plaintiff Jervis that had already been produced in the *Llorens* action.

Robbins Geller filed this action on May 16, 2011, and is well-positioned to lead up this litigation on behalf of Rural/Metro shareholders with the assistance of BMF. Robbins Geller is in the process of reviewing the documents produced to date, and is preparing to take depositions once they are scheduled in this matter. Plaintiff Jervis notes that, although the scheduling order calls for completion of depositions by May 24, 2011, the scheduling order provides that that deadline can be extended by agreement of the parties once there is an understanding of when the shareholder vote will be set, and when a preliminary injunction hearing will be scheduled. Neither has occurred yet. Thus, Robbins Geller has demonstrated the appropriate level of vigor in prosecuting this action.

        **b.**      **The Quality of Pleading that Counsel Has Prepared**

Robbins Geller and BMF has filed the most complete pleading, the initial pleading filed in this action on May 16, 2011. The Jervis pleading is focused on the critical process and disclosure issues that counsel discerned after reviewing the Preliminary Proxy. With respect to the process, the Jervis pleading focuses on, among other things:

- The Board's failure to contact any strategic buyers despite the Board's articulation that its raison d'etre for conducting a sales process was to solicit an offer from a private equity fund (which plaintiff Jervis believes to be Clayton Dublier & Rice LLP ("CD&R")) that was in the process of acquiring Rural/Metro's principle competitor, EMS, because of the obvious strategic implications of such a merger;

- The Board's decision to agree to a merger with Warburg despite the fact that another bidder (whom plaintiff Jervis, again, believes to be

CD&R) was actively bidder and just needed some additional time to complete its acquisition of (plaintiff Jervis believes) EMS;

- The fact that one of the Board's financial advisors, RBC Capital Markets, LLC ("RBC"), was seeking to provide buy-side financing to potential buyers for Rural/Metro, which incentivized RBC to steer the Company away from strategic buyers, who would not need equity financing, and towards financial buyers, who likely would; and

- The absence of any discussion in the Preliminary Proxy about management's negotiation and tacit agreements for continuing employment and/or equity rollover, despite the fact that Warburg's debt financing commitments are expressly conditioned, among other things, on obtaining cash equity commitments that include "the equity of management and existing equity holders of the Company."

Plaintiff Jervis believes that, collectively, these issues present a potential *Revlon* claim, especially in light of the specter of self-interest by Company management and other Company insiders associated with Warburg's implied promise of equity rollover.

By comparison, the amended complaint filed by Faruqi in the *Llorens* action did not discuss any of these critical process issues, with limited exception of a single reference to RBC's offer of buy-side financing to potential bidders, and even this reference was couched solely as an undefined disclosure allegation and not a potential process problem. *Llorens* Compl., ¶21 (alleging that the Preliminary Proxy "fails to disclose if any of the potential buyers contacted during the sales process indicated if they would seek potential financing from RBC"). Instead, the *Llorens* complaint focuses a large part of its 27 pages on replicating press releases concerning Rural/Metro's historic financial results and the announcement of the Proposed Acquisition. *See id.* at 8-17. Its substantive allegations about the process are limited to a recitation of Company insider holdings and a rundown of the deal protection devices. *See id.* at 18-20.

11

Accordingly, putting the two complaints side-by-side inevitably results in the conclusion that the Jervis pleading is superior with respect to process allegations. As Vice Chancellor Laster concluded in *Del Monte*, all other counsel performance issues judged as equal, a pleading that "identifie[s] and attack[s] . . . potential significant process flaws which, if true, could lead to relief" favors appointment of counsel that drafted that pleading. *Del Monte*, 2010 Del. Ch. LEXIS 255, at *25-*26.

With respect to the disclosure issues, the Jervis pleading focuses on disclosures associated with the process issues detailed above, as well as other process issues and the data and inputs underlying the fairness opinions offered by RBC and a second investment banker, Moelis & Co. ("Moelis"), retained by the Board to offer a fairness opinion because RBC was conflicted by its offer of buyside financing for potential acquirors. Although the *Llorens* complaint does allege a number of the financial disclosures addressed in the Jervis pleading, it covers none of the important process issues. Importantly, the *Llorens* pleading makes no mention of the failure to disclose management's discussions of equity rollover with Warburg, along with a number of other important non-disclosures, including:

- whether management discussed continued employment and/or rollover shares during its meetings with potential acquirers between February 9, 2011 and March 22, 2011, or at any point in time thereafter;

- the compensation RBC has received in the last two years for services rendered to Rural, Warburg, and their affiliates; and

- financial projections provided by Rural/Metro management and relied upon by RBC and Moelis in its analyses, for years 2011-2016, for the following items: EBIT (or D&A); Taxes (or Tax Rate); Stock-based compensation expense; and changes in working capital.

12

Accordingly, the Jervis pleading is superior to the complaint filed by Faruqi in the *Llorens* action, with respect to both process and disclosure issues. And, as noted by Vice Chancellor Laster in *Del Monte*, it would not be appropriate "to discount the strength of [the Jervis] pleading because of the prospect that other plaintiffs' counsel could amend their complaints to incorporate its allegations. To prepare a good complaint requires the investment of time and resources. Lawyers must develop factual allegations and legal theories, then weave them together in a persuasive pleading. If other lawyers can free ride by copying a well-crafted complaint, counsel will have diminished incentives to investigate potential claims and file good cases." *Del Monte*, 2010 Del. Ch. LEXIS 255, at *26.

### 3.     Counsel' Track Record and Ability to Litigate Going Forward

Counsel's qualifications are set forth above. This factor also clearly favors appointment of Robbins Geller as Lead Counsel and BMF as Liaison Counsel. Vice Chancellor Laster considered these qualifications in the *Del Monte* decision, as compared to the qualifications submitted by a group that included Faruqi, and relied extensively on those qualifications in appointing Robbins Geller to serve as co-lead counsel with Grant and Eisenhoffer ("G&E").

In *Del Monte*, Vice Chancellor Laster noted that Robbins Geller "has achieved significant success in Delaware," and also noted that BMF is "a Delaware firm that has established an excellent track record of its own." *Id.* at *30-*31. Vice Chancellor Laster cited Robbins Geller's and BMF's successes in *Chaparral Resources* and *Prime Hospitality*, as well as Robbins Geller's successes in *TD Banknorth* and *ACS*, and concluded that "[n]one of the other firms who seek the leadership position have comparable track records in this

Court." *Id.* at \*30-\*34.  On the strength of these qualifications, Vice Chancellor Laster

appointed Robbins Geller to serve as co-lead counsel with G&E.  Vice Chancellor Laster's

confidence in Robbins Geller was borne out, as Robbins Geller's litigation efforts resulted in

a sweeping injunction precluding the defendants from holding a shareholder vote for 20

days, and precluding operation of the deal protection devices in the merger agreement at

issue.  *See Del Monte*, 2011 WL 532014.

Importantly, Robbins Geller was appointed in *Del Monte* over, among others, Faruqi,

because of Faruqi's lack of demonstrated success in litigation in Delaware.  Vice Chancellor

Laster noted that Faruqi had "fudged" it resume to some extent by "claim[ing] credit for the

impressive outcome in *Emerging Communications*" event though Faruqi in fact represented

one of the original plaintiffs who:

> pressed forward with a settlement after confirmatory discovery that would
> have resulted in a final price of $10.25 binding those stockholders who did
> not seek appraisal to the same price negotiated by the special committee.
> Only after objection by a large holder represented by a very large firm that
> more usually represents corporate defendants than stockholders was the
> settlement abandoned. The ultimate result was an award of damages based on
> a $38.05 per share value, in a detailed opinion by Vice Chancellor (Justice)
> Jacobs that found glaringly obvious procedural and substantive problems
> with the special committee process.

*Del Monte*, 2010 Del. Ch. LEXIS 255, at \*33-\*34 (quoting *In re Cox Communications Inc.*

*S'holders Litig.*, 879 A.2d 604, 632 (Del. Ch. 2005)).  Vice Chancellor Laster built on his

criticism of Faruqi in *In re Compellent Technologies, Inc. S'holder Litig.*, C.A. No. 6084-

VCL, Hearing on Motion to Consolidate and Organize Counsel and the Court's Ruling, at 6

(Del. Ch. Jan. 13, 2011) (Exhibit G hereto), noting that Faruqi cannot point to a single matter

where it has generated post-merger "tangible benefits for shareholders," and that Faruqi's

inability to identify tangible results represents "a big hole in [Faruqi's] firm resume." *Id.*

Accordingly, this factor also favors appointment of Robbins Geller and BMF.

## CONCLUSION

For the foregoing reasons, plaintiff Jervis respectfully submits that her motion to

consolidate and for the appointment of Robbins Geller as lead counsel and BMF as Delaware

liaison counsel should be granted.

<div style="margin-left:40%">

BOUCHARD MARGULES
& FRIEDLANDER, P.A.

/s/ Joel Friedlander
Joel Friedlander (Bar No. 3163)
Sean M. Brennecke (Bar No. 4686)
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
*Attorneys for Plaintiff*
*Joanna Jervis*

</div>

OF COUNSEL:

ROBBINS GELLER RUDMAN
& DOWD LLP
Randall J. Baron
David T. Wissbroecker
Edward M. Gergosian
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058

GOLDFARB BRANHAM, LLP
Hamilton Lindley
2501 North Harwood Street, Suite 1801
Dallas, TX 75201
(214) 583-2233

DATED: May 19, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2011, I caused a copy of the **Plaintiff Joanna Jervis' Motion To Consolidate And Appoint Lead And Liaison Counsel** to be served on the following counsel by Lexis-Nexis File and Serve:

> Thomas W. Briggs, Esquire
> William M. Lafferty, Esquire
> John P DiTomo, Esquire
> MORRIS NICHOLS ARSHT
>     & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899

> James C. Strum, Esquire
> FARUQI & FARUQI LLP
> 20 Montchanin Rd.
> Suite 145
> Wilmington, DE 19807

> Donald J Wolfe, Esquire
> Brian C. Ralston, Esquire
> Justin Morse, Esquire
> POTTER ANDERSON
>     & CORROON LLP
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE 19899

### BY HAND DELIVERY:

> Christopher S. Shackelton
> Michael P. DiMino
> Eugene I. Davis
> Earl P. Holland
> Conrad A. Conrad
> Henry G. Walker
> Robert E. Wilson
> c/o The Corporation Trust Company
> Corporation Trust Center
> 1209 Orange Street
> Wilmington, DE 19801

WP Rocket Merger Sub, Inc.
c/o Corporation Service Company
2711 Centreville Road, Suite 400
Wilmington, DE 19808

WP Rocket Holdings LLC
c/o Corporation Service Company
2711 Centreville Road, Suite 400
Wilmington, DE 19808

### BY REGISTERED MAIL:

Warburg Pincus, LLC
466 Lexington Ave #10
New York, New York 10017

/s/ Sean M. Brennecke
Sean M. Brennecke (#4686)





| | GRANTED | EFiled: May 27 2011 12:18PM EDT<br>Transaction ID 37837092<br>Case No. Multi-case |
|---|---|---|

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BEATRIZ LLORENS, on Behalf of Herself and All Others Similarly Situated, | ) )  ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 6350-VCS |
| RURAL METRO CORPORATION, MICHAEL DIMINO, CHRISTOPHER S. SHACKELTON, CONRAD A. CONRAD, EUGENE I. DAVIS, EARL P. HOLLAND, HENRY G. WALKER, ROBERT E. WILSON, WP ROCKET HOLDINGS LLC, WP ROCKET MERGER SUB, INC., AND WARBURG PINCUS, LLC, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JOANNA JERVIS, individually and on behalf of all others similarly situated | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 6489-VCS |
| CHRISTOPHER S. SHACKELTON, MICHAEL P. DiMINO, EUGENE I. DAVIS, EARL P. HOLLAND, CONRAD A. CONRAD, HENRY G. WALKER, ROBERT E. WILSON, WP ROCKET HOLDINGS LLC, WP ROCKET MERGER SUB, INC., and WARBURG PINCUS, LLC | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## [PROPOSED] ORDER OF CONSOLIDATION AND APPOINTMENT OF LEAD COUNSEL

It appearing that the above-captioned actions involve the same subject matter and that the administration of justice would be best served by consolidating the actions,

**IT IS HEREBY ORDERED** this ___ day of May, 2011:

1.    The above-captioned actions shall be consolidated for all purposes. Hereafter, papers need only be filed in Civil Action No. 6350-VCP ("Consolidated Action").

2.    The consolidated case caption shall be:

IN RE RURAL METRO CORPORATION) CONSOLIDATED
SHAREHOLDERS LITIGATION              ) C.A. No. 6350-VCS

3.    Plaintiff Beatriz Llorens is hereby designated Lead Plaintiff and FARUQI & FARUQI, LLP, 20 Montchanin Road, Suite 145, Wilmington, DE 19807 are hereby designated as Lead Counsel.

4.    The Amended Complaint filed in C.A. No. 6350-VCS shall be deemed the operative complaint in this matter.  Lead Counsel and Defendants shall confer with respect to a schedule for the filing of any consolidated amended complaint and any answers or responses thereto.

5.    Lead Counsel shall set policy for Plaintiffs for the prosecution of this litigation, ensure that there is no duplication of effort or unnecessary expense, coordinate on behalf of Plaintiffs the initiation and conduct of discovery proceedings, provide direction, supervision and coordination of all the activities of Plaintiffs' counsel and have the authority to negotiate a settlement, if appropriate, subject to approval of Lead Plaintiff and the Court. Any agreement reached between counsel for Defendants and Lead Counsel shall

2

be binding on the other Plaintiffs.

6.      Plaintiff's Lead Counsel shall assume the following powers and responsibilities:

      a.      coordinate and direct the preparation of pleadings;

      b.      coordinate and direct the briefing and argument of motions;

      c.      coordinate and direct the conduct of discovery and other pretrial proceedings;

      d.      coordinate and direct class certification proceedings;

      e.      coordinate the selection of counsel to act as Plaintiffs' spokesperson at pre-trial conferences;

      f.      call meetings of Plaintiffs' counsel as they deem necessary and appropriate from time to time;

      g.      conduct any and all settlement negotiations with counsel for the Defendants;

      h.      coordinate and direct the preparation for trial and trial of this matter, and to delegate work responsibilities to selected counsel as may be required; and

      i.      coordinate and direct any other matters concerning the prosecution or resolution of the Consolidated Action.

7.      Lead Counsel shall be responsible for coordinating all activities and appearances on behalf of Plaintiffs and for the dissemination of notices and orders of this Court, as well as for communications to and from this Court. No motion, request for discovery or other pre-trial or trial proceedings shall be initiated or filed by any Plaintiffs

3

except by Lead Counsel.

8.      If a case involving the same or related subject matter of the Consolidated Action is hereafter filed in this Court, this Court requests the assistance of counsel in calling to the attention of the Court the filing of such case which might properly be consolidated as part of the Consolidated Action, and counsel are to assist in assuring that counsel in subsequent actions receive notice of this Order.  Each new case that arises out of the subject matter of this action that is filed in this Court shall be consolidated with this action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, file an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

<div style="text-align:right">Vice Chancellor Leo E. Strine, Jr.</div>

4

This document constitutes a ruling of the court and should be treated as such.

|                              |                                    |
|-----------------------------:|:-----------------------------------|
| **Court:**                   | DE Court of Chancery Civil Action  |
| **Judge:**                   | Multi-case                         |
| **File & Serve Transaction ID:** | 37760220                       |
| **Current Date:**            | May 27, 2011                       |
| **Case Number:**             | Multi-case                         |
| **Case Name:**               | Multi-case                         |
| **Court Authorizer:**        | Leo E Strine                       |

/s/ Judge Leo E Strine